746 P.2d 44

**Roberta KORZEP, Petitioner,**

v.

**SUPERIOR COURT OF the STATE OF ARIZONA, In and For the COUNTY OF YUMA, Honorable Douglas Keddie, a judge thereof, Respondent Judge,**

**STATE of Arizona, ex rel. David S. ELLSWORTH, Yuma County Attorney, Real Party in Interest.**

**No. 1 CA–SA 223.**

Court of Appeals of Arizona, Division 1, Department B.

Nov. 24, 1987.

Suciu, Donovan & Schmitt by Michael J. Donovan, Yuma, for petitioner.

David S. Ellsworth, Yuma Co. Atty. by Philip L. Hall, Chief Deputy Co. Atty., Yuma, and Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Criminal Div., Phoenix, for respondent.

## OPINION

JACOBSON, Judge.

This special action seeks to remand a criminal prosecution to the grand jury for a redetermination of probable cause. The central issue presented is whether a pathologist's opinions were mischaracterized in hearsay testimony to the grand jury and if so, whether this requires a remand to the grand jury for presentation of the opinions by the doctor's own testimony.

The facts are that the petitioner, Roberta Korzep, has been indicted for the second degree murder of her husband, David Korzep. The indictment was returned by the grand jury based solely on the testimony of investigating police officer, Brian Rodgers. Officer Rodgers related to the grand jury the petitioner's version of the occurrence leading up to her admission that she had stabbed her husband. According to petitioner, she had stabbed her husband in the kitchen after he had physically abused her; the knife used in the stabbing was readily accessible in the kitchen; and she had reached for the knife and stabbed him in a spontaneous reaction to the victim's aggression. Officer Rodgers further quoted petitioner as stating that the victim then followed her into the bedroom (some 20 feet from the kitchen), where he again lunged at her, before he fell at the bed-

room's doorway, whereupon the petitioner fled.

Physical facts existed which, depending upon their medical interpretation, could cast doubt upon the petitioner's version of the occurrence and hence, whether she in fact acted in self defense in stabbing her husband. The first of these physical facts was the location of the victim's body in the doorway of the bedroom some 20 feet from the kitchen. The second was a bruise on the victim's chest. Third was an autopsy revealing that the victim suffered a ruptured spleen. The fourth physical fact was the lack of blood anywhere in the home, other than at the point where the body was found. Finally, there was no evidence of physical abuse on the petitioner.

Dr. Robert Mallon, Medical Examiner for Yuma County, performed an autopsy on the victim. Officer Rodgers was present at the autopsy and discussed with Dr. Mallon certain physical findings and the medical conclusions which could be drawn from them. Officer Rodgers was allowed through hearsay to relate these medical conclusions to the grand jury. Officer Rodgers attributed to Dr. Mallon the opinion that the spleen was ruptured after the stabbing took place and possibly was the result of the victim being kicked; that based upon the lack of visible blood, the victim would not have walked around after being stabbed; and that based upon the "extreme wound", the "body either goes into shock and you collapse, or you flee from the cause of the injury...."

Thus the grand jury was presented, through hearsay, with the medical opinion that the stabbing probably did not occur in the kitchen where the knife was readily accessible; that after being stabbed the victim was possibly kicked, resulting in a ruptured spleen; and that contrary to the continued aggressive conduct attributed to the petitioner, the victim would have either collapsed immediately or sought to flee from the attacker. All of these medical "facts" were contrary to petitioner's version of the continued aggressive conduct by the victim leading to his death.

At the hearing on petitioner's motion for remand for redetermination of probable cause, Dr. Mallon testified that although he was originally of the opinion that the ruptured spleen followed the stabbing, he was now of the opinion that it was the direct consequence of the stabbing blow. Dr. Mallon also testified that a person in shock could walk and that the presence of the body 20 feet from the kitchen was not medically inconsistent with a stabbing occurring in the kitchen. In short, in Dr. Mallon's medical opinion, the petitioner's version of the stabbing was consistent with the physical facts. The doctor readily admitted that Officer Rodger's version of his opinions expressed to the grand jury were not a complete distortion of opinions he had tentatively held. He emphasized, however, that the definiteness with which Officer Rodger's expressed those opinions was not warranted and that, at least as to the ruptured spleen, the version heard by the grand jury was incorrect.

Based upon these inconsistencies,[1] the petitioner contends that the grand jury was sufficiently misled so as to justify a redetermination of probable cause. The petitioner also contends that this misleading impression was the direct result of the use of hearsay in this matter. While conceding that hearsay testimony can support an indictment, *State v. Baumann*, 125 Ariz. 404, 610 P.2d 38 (1980), the petitioner urges us to adopt the viewpoint embraced by the Court of Appeals for the Second Circuit that hearsay before a grand jury should be limited to those occasions "when direct testimony is unavailable or when it is demonstrably inconvenient to summon witnesses able to testify to facts from personal knowledge." *United States v. Umans*, 368 F.2d 725, 730–31 (2d Cir.1966). Since Dr. Mallon was obviously "available", petitioner urges that the use of hearsay under these circumstances is improper.

---

**1.** The petitioner also contends that the prosecutor made improper comments to the jury; that the grand jury was improperly instructed on self defense; and that exculpatory information was withheld from the grand jury. We conclude that no error was committed in these areas and therefore do not discuss them further.

Petitioner overstates the *Umans* case. The Court there articulated what it regarded as a desirable limitation on the use of hearsay before a grand jury. It did not go so far, however, as to require that all indictments be remanded where such limitations were exceeded. Nor need we go so far. We agree, however, that the unbridled use of hearsay before a grand jury has the potential for abuse, especially when the intonations and impressions of the witness are those of a person whose position in the proceedings is not neutral. Moreover, the potential for abuse is exacerbated where, as here, the lay witness attempts by hearsay to present and explain the opinions of an expert.

Officer Rodgers was placed in the dilemma of not only attempting to summarize but also explain Dr. Mallon's opinion to the grand jury. While we are sure that he was attempting to truthfully relate what he thought were Dr. Mallon's opinions as to key elements of the evidence, it is clear that at points in response to juror's questions he, in essence, was speculating as to what emphasis the medical expert would have placed upon certain medical facts. Dr. Mallon's opinions as recounted to the trial court were far less certain and often differed from those attributed to him by Officer Rodgers:

Q. This factor of bleeding, is that, in fact, in your opinion, evidence that the stabbing, as reflected to by Roberta Korzep, did not occur in the kitchen?

A. I can't comment on that.

Q. Would you have been able to say yes in front of a grand jury?

A. No.

Q. Would you have been able to use an example like this, an example like gravitational flow and existence did that; from a medical standpoint, is it inconsistent the stab occurred in the kitchen?

A. I can't say that with any certainty.

Q. Would you have answered that in front of the grand jury?

A. I would have given the same answer, I could not say with any degree of certainty.

\* \* \* \* \* \*

Q. Would you say, in fact, the bruise, sir, now would you say that the bruise in the upper left hand chest was in fact a result of a kick by any person now?

A. No.

Q. And, if it was suggested to the grand jury, I presume it would be inaccurate?

A. Certainly. The only thing that you can say, the bruise suggests blunt trauma and consider the possibilities.

Q. Would you consider now the bruise in the slightest degree to the shattered spleen?

A. I don't think it has a thing to do with it ...

Q. ... Would you have told this grand jury that definitely the spleen was ruptured after the stabbing and before death?

A. No. I wouldn't say that.

Q. If Brian Rodgers said that, he was wrong?

A. If he said that, using the word definitely, in particular, he was wrong. I did not say and would not say that.

Q. With respect to shock, would you tell this grand jury all of this information you have given us about shock suggests medical evidence that Roberta Korzep's statements this occurred in the kitchen was not true?

A. I couldn't say that. The only thing I can say is discussing from the standpoint of what I would expect and say from the position, rather from considering the area of shock, I felt it did occur, but could not make any statement as to when the stabbing had occurred and definitely how far he had walked. I can only discuss it from my experience of what I know about shock and trauma.

Q. Okay. Doctor, was the bottom line of your interview with Dr. Rodgers that these propositions he had, in essence, were his word against Roberta Korzep's?

A. I said that?

Q. Isn't it in fact the way the case is?

A. Basically.

Q. Isn't in fact [sic] true, all details we have gone into about medical factors

here, none of them would have resulted in the opinion from you that any of them were inconsistent with Roberta Korzep's statement it happened in the kitchen?

A. That's correct.

■ It is clear in this case that had the prosecution called Dr. Mallon to testify before the grand jury, it would have avoided the discrepancy between the opinions actually held by Dr. Mallon and Officer Rodgers' recounting of those opinions which bear directly on the truth of the petitioner's version of events. We need not, however, invoke an automatic remand rule where expert opinions are presented through hearsay testimony. Rather, where the prosecution uses investigative police officers to transmit hearsay expert opinions which are material both to the issue of whether an indictment is to be returned and if so, the degree of the crime to be indicted, the following rule is to apply: If there exists a high probability that the grand jury would not have indicted had they heard the testimony of the expert declarant rather than a hearsay version, then the matter must be remanded to allow the grand jury to make that determination. *See, United States v. Estepa,* 471 F.2d 1132 (2d Cir.1972).

■ In our opinion, there is a high probability that had the grand jury been given the opportunity to evaluate Dr. Mallon's testimony first hand, it would not have indicted, or, if an indictment was returned it would have not been for murder.

The dissent has characterized the misleading nature of the hearsay testimony as a sufficiency of the evidence problem which is immune from attack under the rationale of cases such as *State v. Jacobson,* 22 Ariz.App. 128, 524 P.2d 962 (1974). This argument covers too much. It is not the sufficiency of the evidence which was presented to the grand jury that is questioned, but its inaccuracy which renders the decision of the grand jury less than fair and impartial. *Crimmins v. Superior Court In and for Maricopa County,* 137 Ariz. 39, 668 P.2d 882 (1983). Remand is necessary to correct this inaccuracy.

We previously entered an order in this matter remanding the case to the grand jury for a redetermination of probable cause. That order is reaffirmed. The stay previously entered is quashed.

FIDEL, J., concurs.

EUBANK, Judge, dissenting:

I dissent. I voted against taking special action jurisdiction in this matter because the record supports the Grand Jury's indictment, which is valid on its face.

A.R.S. § 21–413 provides:

The grand jury shall return an indictment charging the person under investigation with the commission of a public offense if, from all the evidence taken together, it is convinced that there is probable cause to believe the person under investigation is guilty of such public offense,

In *State v. Baumann,* 125 Ariz. 404, 610 P.2d 38 (1980), our Supreme Court stated:

The duty of a grand jury is to decide whether probable cause exists and that probable cause determination may only be challenged by a motion alleging the defendant was denied a substantial procedural right or that an insufficient number of grand jurors concurred in the indictment, 17 A.R.S. Rules of Criminal Procedure, Rule 12.9. ... Absent a showing of prejudice in these grand jury proceedings, there can be no reversal of error. (Citations omitted).

*Id.* at 409, 610 P.2d at 43.

The only attack raised here is the sufficiency of the evidence presented to the Grand Jury. Our Supreme Court has wisely said that such inquiry is up to the Grand Jury alone.

In *State v. Rosenblatt,* 112 Ariz. 461, 543 P.2d 773 (1975), the Supreme Court said:

There was no intention in the adoption of Rule 16.7 to change the long established rule that an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence. *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Cos-*

*tello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *Holt v. United States,* 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910). A trial court has no power to inquire into or weigh the legal sufficiency of the evidence presented to the grand jury from which an indictment resulted.

*Id.* at 462, 543 P.2d at 774; *State v. Jacobson,* 22 Ariz.App. 128, 524 P.2d 962 (1974). The majority opinion violates this rule.

Further, our Supreme Court has held that the state is not obligated to present exculpatory evidence to a grand jury, absent a request from the grand jury, unless the evidence is clearly exculpatory. Clearly exculpatory evidence is defined as evidence of such weight that it would deter the grand jury from finding the existence of probable cause. *State v. Coconino County Superior Court,* 139 Ariz. 422, 425, 678 P.2d 1386, 1389 (1984). Thus, in *Coconino,* the fact that the state did not produce evidence of Mauro's mental health history, which was bad, did not defeat the probable cause indictment returned by the grand jury. The court pointed out that while such evidence may be relevant for the trial, it is not required for grand jury consideration. The same is true here. The issue of justification (self-defense) is a defense matter to be established at trial.

A.R.S. § 13–401 *et seq. See also, State v. Johnson,* 108 Ariz. 42, 43, 492 P.2d 703, 704 (1972).

In addition, perjured testimony before a grand jury will not serve as a basis for setting an indictment aside, unless it is established "that the jurors were unable to base their decisions to indict on the evidence." *Franzi v. Superior Court,* 139 Ariz. 556, 565, 676 P.2d 1043, 1052 (1984). The testimony of Officer Rodgers would certainly not be characterized as perjury. But, if it were, by analogy, it would not require what the majority is doing by its remand.

Finally, petitioner was not denied a substantial "procedural right" as required by Rule 12.9, Arizona Rules of Criminal Procedure, because none of the procedural rules, Rule 12.1 through 12.8, have been violated.

Thus, the trial judge was, in my opinion, justified in denying a redetermination of probable cause, and he did not abuse his discretion in denying the motion.