838 P.2d 1295

**Roberta KORZEP, Petitioner,**

**v.**

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF YUMA, the Honorable Douglas Keddie, a judge thereof, Respondent Judge,**

**STATE of Arizona, ex rel., David S. ELLSWORTH, Yuma County Attorney, Real Party in Interest.**

**1 CA–SA 91–085.**

Court of Appeals of Arizona, Division 1, Department B.

Dec. 24, 1991.

Review Denied Oct. 20, 1992.

Suciu, Donovan & Schmitt by Michael J. Donovan and Glenn J. Gimbut, Yuma, for petitioner.

David S. Ellsworth, Yuma County Atty. by Philip L. Hall, Chief Deputy County Atty., Yuma, for real party in interest.

## AMENDED OPINION

GERBER, Presiding Judge.

Petitioner Roberta Korzep seeks special action review of the trial court's denial of her motion to dismiss or to remand to the grand jury. We accept jurisdiction because of the importance of the statutory issue presented. Because of an error in recounting the procedural history of the case in our earlier opinion, we vacate that opinion and substitute this corrected version for that. The state's motion to reconsider is granted only in this respect.

## FACTS

These facts are those presented in prior court proceedings. Briefly put, petitioner Roberta Korzep ("Roberta"), was the wife of the victim David Korzep ("David"). The couple fought frequently during their marriage. On the night of David's death, both had been drinking. When they arrived home, a fight ensued. Roberta claims that David grabbed her hair and dragged her. She claims she was afraid that he was going to strangle her. After escaping from him, she ran to the kitchen. When she went to the kitchen, David followed her. She states that he started to hit her again. Taking a knife, she then stabbed him once in the stomach, as she now claims, in order to defend herself and prevent the crime of aggravated assault. Bleeding, he turned away from her and walked down the hallway toward the bedroom. Roberta followed him part way down the hall, aware of the blood on his shirt. She then left their house and went to a neighbor's house, the knife still in her hand. David bled to death in the hallway of their home.

## PROCEDURAL HISTORY

On March 12, 1987, Roberta was indicted on second degree murder. Following the denial of a motion to remand, she petitioned for special action relief. In the first of three already published appellate decisions in her case, the court of appeals ordered a remand because of hearsay statements presented to the grand jury. *Korzep v. Superior Court of Yuma County,* 155 Ariz. 303, 746 P.2d 44 (App.1987).

After a new indictment issued on February 5, 1988 for voluntary manslaughter, the trial court denied her second motion to remand based on failure to instruct the grand jury on A.R.S. § 13–411. The case proceeded to trial and ended with a manslaughter verdict. At this trial, the court refused a jury instruction on A.R.S. § 13–411 and denied a post-verdict motion for new trial based on this refusal.

After the court of appeals affirmed, *see State v. Korzep,* 164 Ariz. 175, 791 P.2d 1058 (App.1989), our supreme court reversed the conviction for failure to instruct the trial jury on A.R.S. § 13–411. *State v. Korzep,* 165 Ariz. 490, 799 P.2d 831 (1990). After the case returned to the trial court, the trial court denied Roberta's motion to reconsider a remand for failure to instruct the grand jury on A.R.S. § 13–411. From that denial Roberta then filed this special action in this court raising the following issues relating to A.R.S. § 13–411:

1. What is the effect of A.R.S. § 13–411(C)?
2. Would another trial, in light of A.R.S. § 13–411(C), constitute double jeopardy?
3. Should this case be remanded to the grand jury for a new determination of probable cause with A.R.S. § 13–411 being given to the grand jury?

In the face of the state's waiver argument, we consider these issues for two reasons: (1) the Supreme Court's *Korzep* opinion in this same case was issued *after* Roberta's prior motion to remand was denied, and thus the court's partially favorable view of his A.R.S. § 13–411 argument was not then established; and (2) in part, for that reason, the exact issue she now raises regarding A.R.S. § 13–411 was not raised, or even arguable in this form, at the time of her prior special action. We also find no waiver of her argument in this special action because the Supreme Court's reversal of her conviction and remand places Roberta back in a pre-trial posture.

### A.R.S. § 13–411

A.R.S. § 13–411 presently reads as follows:

A. A person is justified in threatening or using both physical force and deadly physical force against another if and to the extent the person reasonably believes that physical force or deadly physical force is immediately necessary to prevent the other's commission of arson of an occupied structure under § 13–1704, burglary in the second or first degree under § 13–1507 or § 13–1508, kidnapping under § 13–1304, manslaughter under § 13–1103, second or first degree murder under § 13–1104 or § 13–1105, sexual conduct with a minor under § 13–1405, sexual assault under § 13–1406, child molestation under § 13–1410, armed robbery under § 13–1904, or aggravated assault under A.R.S. § 13–1204, subsection A, paragraphs 1 and 2.

B. There is no duty to retreat before threatening or using deadly physical force justified by subsection A of this section.

C. A person is presumed to be acting reasonably for the purposes of this section if he is acting to prevent the commission of any of the offenses listed in subsection A of this section.

Roberta broadly argues that A.R.S. § 13–411(C) creates a conclusive presumption which now grants her a judgment of acquittal. She reads subsection (C) broadly as conclusively warranting her innocence.

The present version of A.R.S. § 13–411 accounts for the novel argument raised in this special action. The statute has two origins, one with the Arizona Criminal Code Commission, the other with subsequent legislative amendments. Most of subsections

(A) and (B) were first proposed by the Arizona Criminal Code Commission in 1975. The Code Commission Commentary of 1975 indicates that the statute as proposed allowed a narrowly tailored use of force, including deadly force, to prevent the imminent commission of a few select crimes which by their nature are always life-threatening, notably arson of an occupied building, murder, manslaughter, kidnapping, and crimes like robbery and burglary involving weapons. The Code Commission's recommendations came from the then proposed Tennessee Criminal Code Sec. 39–745, which that state has not adopted. In the mind of the 1975 Arizona Code Commission, these few imminent life-threatening crimes justify countervailing use of force, including deadly force, to prevent them. *See Az. Revised Criminal Code (Az. Criminal Code Commission Report)* 67 (1975).

In adopting this statute as a crime prevention justification, the 1977 Arizona legislature began to broaden justification well beyond prevention of life-threatening crimes. That legislature's deletion of "imminent" from the commission's proposal means that the life-threatening crime sought to be prevented could lie, as here, some undefined temporal distance from the moment of preventive action. Ensuing legislatures then added to the list of life-threatening crimes new offenses which, unlike the original crimes, are not by their nature life-threatening—notably, child molestation and sexual conduct with a minor. The statute's original purpose of justifying force to prevent only life-threatening crimes was thereby eroded or, put differently, broadened. Under these legislative modifications, the public is empowered to

employ force, including deadly force, to prevent not only life-threatening crimes like murder but also some non-life-threatening, non-coercive, non-imminent crimes.[1]

The 1983 legislature made further amendments. It added both A.R.S. § 13–411(C) and the "declaration of policy" now appended to the statute presumably as an interpretive guide. The latter reads as follows:

It is the legislative intent to establish a policy by this law giving notice to all citizens, law enforcement personnel and the state courts that a *person's home*, its contents and the residents therein shall be totally respected and protected in Arizona, and that the law enforcement officials and courts shall apply this and all other applicable criminal laws relating to the protection of the home and its residents promptly and severely so as to restore the *total sanctity of the home* in Arizona.

(Emphasis added.)

Added to the statute six years after its original enactment, this declaration of legislative purpose purports to interpret the previously enacted crime prevention justification as though it were a home protection statute. It adds domestic protection to what had been a narrowly defined justification for crime prevention without regard to place. Read in its entirety with this legislative declaration, A.R.S. § 13–411 thus presently incorporates into one statute broad justifications for both crime prevention and domestic protection, two justifications which the common law traditionally treated separately under differing standards of culpability.[2]

---

1. Sexual conduct with a minor under A.R.S. § 13–1405 can be committed consensually by teenagers under age 15. When so committed it is a class 2 felony. When the same conduct is committed by teenagers over the age of 15, this crime is a class 6 felony, meaning that, as an open ended offense, it can also be a misdemeanor. Whether a felony or misdemeanor, this consensual conduct remains "sexual conduct with a minor." Under the present version of A.R.S. § 13–411, a parent apparently may kill one of the parties to teenage sexual experimentation in the name of preventing the commis-

sion of the crime of "sexual conduct with a minor."

2. "These principles are distinct and observe separate rules." Note, *Dwelling Defense Law in Missouri: In Search of Castles,* 50 UMKC L.Rev. 64, 69 (1981). "Such force [crime prevention] is prompted by different motives than when the actor is protecting himself or his property, because the threat is not to a personal interest of the actor but rather to society's general interest in preventing criminal acts.... Thus the effect of the crime prevention privilege is to allow a

Whether or not the sanctity of the home and protection of its residents are best served by encouraging force inside its walls, the crime prevention authorization in A.R.S. § 13–411(A) extends well beyond this declaration of legislative intent. One might expect that excessive force would never be exonerated because the justification in A.R.S. § 13–411(A) extends only to the actor-defendant who acts "reasonably." Subsection (C), added by the 1983 legislature six years after subsection (A), however, states that the actor using force to prevent crime is "presumed" to be acting reasonably in using any degree of force simply by acting for the purpose of crime prevention.

In the interpretation of the statute proposed by defendant, the actor's statement of acting with the intent to prevent one of the listed crimes appears self-justifying no matter how unreasonable the preventive force. This reading of the statute is attractive to this defendant, because, in her view, it requires permanent dismissal of her manslaughter charge merely because of her stated intent of acting to prevent a crime.

In this reading, subsection (C) adopts a subjective rather than objective standard for measuring the tolerable degree of force used to prevent crime and to protect the home. The presumption in A.R.S. § 13–411(C) would then justify any amount of force simply because the actor decrees it to be used for crime prevention. In this reading, the tribunal to measure the reasonableness of this force is neither an objective third person nor an impartial court but the embroiled actor's own assertion that the force chosen to prevent crime or enhance domestic sanctity was appropriate. Read this way, A.R.S. § 13–411 encourages the citizenry to take crime prevention and enhancement of domestic sanctity into its own hands without fear of reprimand from any quarter. Subsection (C) then justifies the chosen degree of force merely via the defendant's own invocation of that purpose.

Read in this fashion, the broad language in subsection (C) insures that this presumption will always inure against the state. The homeowner using force to prevent crime or safeguard the home is, after all, a criminal defendant being prosecuted by the state. This reading of the presumption in (C) requires this defendant's vindication because it appears to ratify the use of any amount of force to prevent crime or protect domestic tranquillity.

These reflections are relevant to the present case. Roberta, of course, sees herself as the favored beneficiary of this interpretation of A.R.S. § 13–411(C). During a quarrel in her home, she stabbed her husband because, as she now states, she believed he was about to commit the crime of aggravated assault against her, a crime only preventable, in her view, by killing him. She claims now that she should be exonerated for acting to prevent that crime.[3]

### The Presumed Reasonableness of Defendant's Conduct

Roberta argues that the presumption in A.R.S. § 13–411(C) requires her acquittal on its face, i.e., simply by asserting this motive under oath, she is *ipso facto* deserving of a judgment of acquittal. Its many flaws notwithstanding, our criminal law has never been quite so naive as to establish a defendant's innocence by the defendant's own word alone.

An initial task is to reconcile the "reasonable" standards in A.R.S. § 13–411(A) and (C). Subsection (2) of Model Penal Code (MPC) § 3.09, a major source of much of our code's justification language, provides that where justification turns on the actor's

---

person to use force in preventing a crime, rather than compel him to await the commission of the unlawful act." Note, *Justification for the Use of Force in the Criminal Law,* 13 Stan.L.Rev. 566, 568 (1961).

**3.** Arizona is among the few but not the only Western state to allow such a justification. The laws of the West and South in the United States have been read in the past to find it "abhorrent to the courts to require one who is assailed to seek dishonor in flight. The ideal of these courts is found in the ethics of the duelist, the German officer, and the buccaneer." Beale, *Retreat from a Murderous Assault,* 16 Harv.L.Rev. 567 (1903).

belief, liability for offenses involving recklessness or negligence is not barred where the defendant's belief is held recklessly or negligently. MPC § 3.09 (1980); *see People v. Goetz,* 68 N.Y.2d 96, 506 N.Y.S.2d 18, 497 N.E.2d 41 (1986).

The MPC deals with unreasonable belief as recklessness or negligence. Thus, if the defendant's belief under A.R.S. § 13–411(A) is recklessly reached, i.e., with awareness of the risk that it may be unfounded, the defendant is viewed as acting recklessly with respect to this material element of the offense. When the actor's belief alone will qualify for justification, § 3.09(2) dictates that:

... when the actor's belief in the necessity for using force that he used was recklessly or negligently formed, or when he was reckless or negligent in acquiring or failing to acquire any knowledge that is otherwise material to the justification for his use of force, the justification is lost in a prosecution for an offense for which recklessness or negligence, as the case may be, suffices for conviction.

In this formulation, in any prosecution for an offense in which recklessness or negligence suffices to establish culpability, negligence or recklessness in ascertaining the true facts cancels or reduces the justification otherwise afforded.

Justification is not a denial of criminal conduct but an exemption from culpability. Note, *Justification for the Use of Force in the Criminal Law,* 13 Stan.L.Rev. 566, 607 (1961). Like justification generally, the precise justification in A.R.S. § 13–411(C) is most plausibly read as an affirmative defense to otherwise criminal conduct. A homicide defendant asserting justification must come forward with evidence of it.

The majority of jurisdictions place this burden squarely on the defendant. *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), held that shifting the burden of persuasion by such an affirmative defense does not violate due process. *See also Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) (as long as a state's manner of allocating the burdens of proof does not lessen the state's burden to prove every element of the crime charged, a defendant's constitutional rights are not violated). *Martin v. Ohio,* 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987), upheld the Ohio practice of imposing on defendant the burden of proving by a preponderance of the evidence that she was acting in self defense. *Leland v. State of Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952) upheld a requirement that the defense of insanity be proved beyond a reasonable doubt by the defendant. Jeffries and Stephan in *Defenses, Presumptions, and Burden of Proof in the Criminal Law,* 88 Yale L.J. 1325, 1334 (1979), show that shifting the burden of going forward with the evidence has little, if any, impact between the state and the accused. ("Shifting the burden of production is a permissible housekeeping device.")

◼ We conclude, contrary to defendant's interpretation, that the only workable reading of A.R.S. § 13–411(C) is that it provides a presumption of reasonable conduct which, like other presumptions, requires defense evidence. *State v. Daniels,* 106 Ariz. 497, 478 P.2d 522 (1970), *overruled* on other grounds by *State v. Grilz,* 136 Ariz. 450, 666 P.2d 1059 (1983). This presumption is rebuttable and vanishes when the state provides contradictory evidence. *See County Court of Ulster County, New York v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979) (presumption that is rebutted can be disregarded); *State v. Walton,* 133 Ariz. 282, 650 P.2d 1264 (App.1982) (where defendant pleaded self-defense, state was able to rebut testimony by offering contradictory findings); Burke, *The Tension Between In Re Winship and the Use of Presumptions in Jury Instructions after Sandstrom, Allen, and Clark,* 17 N.M.L.Rev. 55 (1987) (presumptions are effective only as long as there is no contradictory evidence, and thus the presumption disappears when such contradictory evidence is introduced); Graham, *Presumptions: More Than You Ever Wanted to Know and Yet Were Too Disinterested to Ask,* 17 Criminal Law Bulletin 431, 433 (1981) (if a presumption has been rebutted,

it disappears). We thus read A.R.S. § 13–411(C) to provide a presumption of reasonableness which the defendant needs to support and which the state may rebut.

We also interpret A.R.S. § 13–411(A) and (C) together to generate both a subjective and an objective component. Paragraph (A) requires that the actor reasonably believe that force is necessary, a matter to be proved by the defendant. This language requires an objective standard. Paragraph (C) refers to the reasonableness of defendant's conduct in terms of the degree of force used. Roberta's subjective belief that an aggravated assault was about to occur gives her not *a priori* immunity from prosecution but merely an initial presumption of acting reasonably under A.R.S. § 13–411(C). The state may then rebut this presumption under A.R.S. § 13–411(A) "if and to the extent" her chosen degree of force is unreasonable to prevent the crime in question. Subsection (A) requires an objective, third person measure of the reasonableness of a defendant's preventive force. Interpreted in conjunction with subsection (C), subsection (A) means that the reasonableness of the conduct used to prevent crime or protect the home must be measured not exclusively by a defendant's self-assertion but also by objective standards of proportionality to the criminal or domestic threat presented. In this case, as in *State v. Hunter*, 142 Ariz. 88, 688 P.2d 980 (1984), if Roberta introduces sufficient evidence of her motive to raise the presumption in (C), the burden shifts to the state to rebut that presumption beyond a reasonable doubt under subsection (A) by showing that her response was objectively unreasonable.

In that event, consistent with MPC § 3.09, a defendant's honest but unreasonable belief becomes a *mens rea* issue which may lead the trier of fact to acquit or convict of a lesser degree of the charged crime, i.e., a defendant's reckless or negligent use of force may lead to conviction for reckless or negligent homicide rather than for intentional homicide. *See People v. Goetz, supra.* We thus reject Roberta's argument that the present version of A.R.S. § 13–411(C) by itself now requires either an *a priori* judgment of acquittal or a purely subjective measurement.

### GRAND JURY REMAND

Roberta also argues under Rule 12.9, Rules of Criminal Procedure, that she was denied a substantial procedural right for failure to instruct the grand jury on A.R.S. § 13–411. *See Crimmins v. Superior Court,* 137 Ariz. 39, 41, 668 P.2d 882, 884 (1983) (an accused is entitled to the right of due process during grand jury proceedings).

A.R.S. §§ 13–404 and –405 embody traditional self-defense concepts. According to our supreme court in *Korzep,* both these statutes are properly given to the trial jury. *See State v. Korzep,* 165 Ariz. 490, 799 P.2d 831 (1990). The Supreme Court's opinion says nothing about whether A.R.S. § 13–411 need also be read to the grand jury but does hold that § 13–411 is "more permissive" than §§ 13–404–405 and, as such, is not covered by those statutes.

Our trek through the labyrinths of A.R.S. § 13–411 should make it clear that if A.R.S. §§ 13–404 and –405 create a degree of justification in using deadly force to counter immediate threats to personal safety, A.R.S. § 13–411 is even "more permissive"—as the Supreme Court noted in its *Korzep* opinion—because subsection (C) only requires on its face that a person act with a crime prevention motive in using deadly force. Section 13–411 is more permissive also because (A) now includes some crimes that are neither imminently or inherently life-threatening. Furthermore, A.R.S. § 13–411 broadens Roberta's defense of justification by locating an initial favorable evidentiary presumption in her asserted belief that her deadly conduct was occasioned only by her effort to protect herself—or the sanctity of her home—from what she thought would be an aggravated assault. Because A.R.S. § 13–411 extends justification further than do A.R.S. §§ 13–404 and –405, and could conceivably lead the grand jury to eschew an indictment, the grand jury should have been allowed to

consider A.R.S. § 13–411 along with those more traditional justification statutes. In so holding, we expressly do not require all justification statutes to be given generally to all grand juries.

The state argues that this issue was already decided by this court in the first appeal in *Korzep v. Superior Court of Yuma County*, 155 Ariz. 303, 746 P.2d 44 (App.1987). That decision, however, is silent on this question. Furthermore, Roberta presently faces an entirely new pretrial setting with a more favorable Supreme Court interpretation of A.R.S. § 13–411, which in part prompts us to take jurisdiction of this special action. Her present procedural status dictates a remand for a new finding of probable cause in a context where A.R.S. § 13–411 is available for grand jury consideration.

## DOUBLE JEOPARDY

■ After the Supreme Court first remanded this case to the trial court, Roberta filed a motion to dismiss. Her claim then was that in light of the presumption in A.R.S. § 13–411(C), the trial evidence already presented could not support any guilty verdict. Both there and here, she argues that under *State v. Ortiz*, 120 Ariz. 384, 586 P.2d 633 (1978), a new trial where the state could introduce new evidence would violate principles of double jeopardy under the Fifth Amendment of the United States Constitution and Article 2 § 10 of the Arizona Constitution. In a word, her argument is that, in light of A.R.S. § 13–411(C), there is insufficient evidence to support a guilty verdict because the presumption in (C) stands unrebutted and the state should not have another chance to try to rebut it.

■ The *Ortiz* court held that where a conviction has been reversed because of *insufficient evidence*, the defendant cannot be retried. Roberta's reversal here, however, is not based on insufficient evidence but on a procedural error, namely a failure to instruct the grand jury on A.R.S. § 13–411. When a case is reversed for trial error, the state is not foreclosed from a retrial or from presenting evidence at a

new trial in response to that error. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), held that reversal for incorrect instructions does not mean that the prosecution has failed to prove its case but only constitutes a determination that the defendant was convicted through defective process.

*Burks* acknowledged the well-established principle that the double jeopardy clause does not prevent retrial of a defendant whose conviction was set aside because of an error in the proceedings. *Id.* at 14, 98 S.Ct. at 21. *United States v. Tateo*, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964) held that a retrial to correct trial error is permissible because "it would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction." *See also Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982) (double jeopardy clause does not act as a bar to the retrial of a defendant who has successfully appealed a conviction unless the conviction was reversed on the grounds of insufficient evidence); *Hoffer v. Morrow*, 797 F.2d 348 (7th Cir.1986) (when conviction is overturned because of trial error, state is free to retry defendant until he is convicted in error-free trial); *Poland v. Arizona*, 476 U.S. 147, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986) (where conviction is reversed on appeal, double jeopardy clause does not forbid retrial and, thus, the original decision is nullified and the slate wiped clean on remand); *State v. Porras*, 133 Ariz. 417, 652 P.2d 156 (App.1982) (double jeopardy clause does not bar retrial of a defendant where reversal is based on an improper standard applied by the trial court). Every reversal of this case has been due to an improper procedural or evidentiary standard applied by the trial court, not due to any insufficiency of evidence. *See Korzep*, 165 Ariz. at 494, 799 P.2d at 835.

Put differently, the state cannot be faulted now for failing to rebut a presumption Roberta did not explicitly raise in her last trial. In light of the presumption in A.R.S.

§ 13–411(C) as we now construe it, the state has an opportunity to present evidence from which a jury could find that Roberta acted unreasonably. There is neither a double jeopardy nor insufficient evidence problem. We find no error in denying the motion to dismiss.

## CONCLUSION

We hold that the grand jury should have been instructed on A.R.S. § 13–411 and remand for this reason. We also hold that A.R.S. § 13–411(C) does not require dismissal on the basis of the defendant's asserted belief in using force. We also hold that the degree of force under A.R.S. § 13–411 is to be measured by objective as well as subjective standards. We remand this case to the grand jury for a new determination of probable cause, with sympathy to any trial judge who may eventually need to compose a jury instruction on A.R.S. § 13–411.

KLEINSCHMIDT and LANKFORD, JJ., concur.