920 P.2d 23

**STATE of Arizona, Petitioner,**

v.

**SUPERIOR COURT OF the State of Arizona, In and For the COUNTY OF COCONINO, the Honorable H. Jeffrey Coker, a judge thereof, Respondent Judge.**

**Todd Lee SMITH, Real Party in Interest.**

**No. 1 CA–SA 95–0290.**

Court of Appeals of Arizona,
Division 1, Department B.

April 16, 1996.

Review Denied July 2, 1996.*

Terence C. Hance, Coconino County Attorney by Camille Bibles, Deputy County Attorney, Flagstaff, for Petitioner.

H. Allen Gerhardt, Coconino County Public Defender by David Goldberg, Deputy Public Defender, Flagstaff, for Real Party in Interest.

OPINION

THOMPSON, Presiding Judge.

On November 27, 1995, we accepted jurisdiction of this petition for special action and granted relief, vacating the trial court's orders, with this opinion to follow.

---

* Moeller, J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

## FACTS AND PROCEDURAL HISTORY

On August 10, 1995, a homicide investigation was presented to the Coconino County Grand Jury. Todd Smith had been arrested for the murder of an elderly couple, Joe and Elaine Tannehill. The Tannehills had been staying in their travel trailer at a campground near Ashurst Lake in Coconino County. Smith was charged by criminal complaint with first degree murder, armed robbery and armed burglary.

At the start of the proceedings, the prosecutor read several statutes to the grand jury, including one defining child abuse. She indicated, however, that a child abuse charge was not being sought. The sole grand jury witness, Detective Michael Rice, testified that on August 3, 1995, he located the Tannehills' bodies after being dispatched to their trailer by concerned campground hosts. Upon securing the scene, Detective Rice noted that the Tannehills' trailer was ransacked and bullet-ridden, Mr. Tannehill's wallet gone and Mrs. Tannehill's purse emptied. Rice described the autopsy findings which showed that both victims' tracheas had been slashed and that they had both suffered multiple skull fractures from blows to the head.

Rice testified that, after interviewing the campground hosts and Smith's mother, detectives determined that Smith's trailer had been parked near the Tannehills' for several days before the murders, that Smith was heavily armed with knives and a gun, and that he had a violent disposition. The detectives located Smith's trailer in Phoenix and obtained a warrant to search it. A person working near the trailer told the detectives that he had seen a person matching Smith's description carrying a green garbage bag towards a nearby dumpster. The detectives found a single green garbage bag in the dumpster which contained a gun and large knife, both covered in blood, and, among other apparel, a small boy's shirt, also bloodied. Smith was located in the vicinity and arrested. He subsequently confessed to killing the Tannehills and taking their property.

Rice related the substance of a conversation between Dr. Tasha Boychuk, a forensic services counselor, and Smith's four-year-old son, Patrick. The conversation revealed that Patrick might have been present during the murders. The grand jurors questioned Rice about the blood-spattered child's shirt and its connection to Patrick. Rice testified that Smith had explained to him that Patrick's shirt was at the scene because he had wrapped it around his hand to feign injury in order to gain access to the Tannehills' trailer. Responding to the grand jurors' inquiries, Rice stated that, in light of the pattern of blood spatters and Patrick's comments to Dr. Boychuk, both he and Dr. Boychuk believed Patrick was present during the murders.

The grand jury indicted Smith as charged, adding a count of child abuse to the true bill. When subsequent forensic analysis of the shirt confirmed that Patrick could not have been wearing the shirt when it became blood-stained, the child abuse count was dismissed on the State's motion.

Alleging *inter alia* that the newly-acquired forensic evidence indicated that the grand jury proceedings had been tainted by false information, Smith moved to remand or dismiss the indictment. The motion was granted, despite the trial court's determination that there had been no errors in the grand jury proceedings. The court reasoned that, should the matter go forward without having the references to child abuse expunged, the case could be "litigated in the Courts for years and years to come," and that the potential for prolonged litigation of the case was a "great concern" to the court.

At the petitioner's request, the trial court stayed further proceedings to allow this special action.

## DISCUSSION

Because we find that petitioner's only remedy is through special action, we granted jurisdiction in this case. *See* Ariz.R.P.Special Actions 1(a).

▮ The function of the grand jury is to investigate whether there is probable cause to believe that a crime was committed and whether the person under investigation committed the crime. *State v. Coconino County Superior Court,* 139 Ariz. 422, 424, 678 P.2d 1386, 1388 (1984). Remand of an indictment

is appropriate only when the defendant is denied a substantial procedural right. *State ex rel. Woods v. Cohen,* 173 Ariz. 497, 502, 844 P.2d 1147, 1152 (1992); Ariz.R.Crim.P. 12.9(a).

■ The trial court properly found no defect in the proceedings. Still, the remand was granted out of an abundance of caution, well-intentioned but misplaced. The trial court was worried that, should Smith be convicted of murder, the conviction could be set aside because of the claimed taint of an erroneous allegation of child abuse in the grand jury proceedings. This would not be so, however, as the probable cause determination by the grand jury is merged in any conviction beyond a reasonable doubt. *State v. Atwood,* 171 Ariz. 576, 607, 832 P.2d 593, 624 (1992), *cert. denied,* 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993). In fact, Smith's only challenge to the denial of his motion to remand would have been through special action. *State v. Murray,* 184 Ariz. 9, 906 P.2d 542 (1995) (defendant may not challenge matters relevant only to grand jury proceedings by appeal from conviction); *State v. Gortarez,* 141 Ariz. 254, 258, 686 P.2d 1224, 1228 (1984) (only exception to special action relief of denial of motion for probable cause redetermination occurs when grand jury proceedings are tainted with information the state knew was based on perjured, material testimony). Thus, the trial court's concern with endless litigation in this matter was unfounded.

We cannot seriously credit Smith's assertion that the suggestion of the child's presence at the trailer could have inflamed the grand jury any more than it would already have been from hearing that Smith confessed to the brutal beating and garroting of two elderly persons. Moreover, if Patrick had been a witness and could testify to the killings, the evidence regarding Patrick was properly before the grand jury. The fact that the child was not present at the crime scene indicates that the jury may have been misinformed, but not to the extent that it would have declined to indict Smith if it had been given the benefit of the forensic evidence. Indeed, the evidence before the grand jury on the remaining counts was overwhelming.

■ Finally, we note that Detective Rice did not venture his opinion on Patrick's presence until repeatedly questioned by the grand jury members on the issue. We believe that, as a general rule, the prosecutor should not interfere with a grand juror's questioning of a witness unless it is along clearly improper and unfair lines of inquiry. *See Nelson v. Roylston,* 137 Ariz. 272, 276, 669 P.2d 1349, 1353 (App.1983) (prosecutor's interference with appropriate inquiry by grand jurors constitutes denial of substantial procedural right). We will not rebuke a prosecutor who acts with the forbearance which we have required.

■ Smith's reliance on *Korzep v. Superior Court,* 155 Ariz. 303, 746 P.2d 44 (App. 1987), and *Escobar v. Superior Court,* 155 Ariz. 298, 746 P.2d 39 (App.1987), is untenable here in that those cases concerned issues material to the determination of probable cause. *Korzep* involved a discrepancy of opinions that created a "high probability" that the grand jury would not have indicted had it been given the opportunity to question a pathologist's testimony firsthand. 155 Ariz. at 306, 746 P.2d at 47. Conversely, improper testimony at grand jury proceedings does not require remand for a new determination of probable cause unless it is shown that the testimony actually damaged and prejudiced the defendant. *Cohen,* 173 Ariz. at 502, 844 P.2d at 1152. As we have noted above, the testimony here about Patrick did not prejudice Smith.

■ *Escobar* was a child abuse case where the prosecutor allowed a witness to mislead the grand jury, misadvised the jurors on a matter of law, and obstructed the grand jury's attempts to secure the presence of the alleged victim for questioning. In contrast, no prosecutorial misconduct occurred here. Indeed, there was some basis for Detective Rice's stated belief that Patrick was present at the trailer, although this proved to be incorrect. Even misleading information on a collateral issue will not invalidate an otherwise valid determination of probable cause. *State v. Jacobson,* 22 Ariz.App. 128, 524 P.2d

962 (1974). And the detective's belief was expressed only in direct response to a juror's question. Smith was denied no substantial procedural right.

Petitioner raises another issue in this special action. He asserts that, at Smith's case management conference, the trial court "temporarily" suspended Rule 8 of the Arizona Rules of Criminal Procedure without strictly adhering to Rule 8.1(e) suspension procedures. Although the court certainly intended to fairly accommodate Smith's need to prepare his defense, petitioner correctly points out that victims have an interest in a speedy trial as well. Defendant's relief is more properly accommodated through granting trial continuances where warranted.

## CONCLUSION

Because the trial court's decision to remand for a new determination of probable cause was arbitrary and because the trial court failed to follow Rule 8.1(e) procedures in suspending Rule 8, we vacate the trial court orders.

EHRLICH and KLEINSCHMIDT, JJ., concur.