NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

JOANNA MAHEALANI REPUCCI, *Appellant.*

No. 1 CA-CR 20-0486
FILED 12-16-2021

---

Appeal from the Superior Court in Maricopa County
No. CR2019-004016-001
The Honorable Jennifer C. Ryan-Touhill, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jennifer Roach
*Counsel for Appellant*

------

## MEMORANDUM DECISION

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge Peter B. Swann and Judge David D. Weinzweig joined.

------

**M c M U R D I E**, Judge:

**¶1**         Joanna Mahealani Repucci appeals from her convictions for aggravated assault, resisting arrest, and disorderly conduct. We find no reversible error and affirm.

### FACTS[1] AND PROCEDURAL BACKGROUND

**¶2**         Around 8:00 p.m. in October 2019, Maricopa County Community College Police Officer Anderson[2] worked in his campus office when he heard screams. Concerned that someone was being attacked, the officer investigated and came across Repucci standing at a bus stop, screaming. He noticed medical-center security guards standing nearby. Anderson testified that after seeing the guards, he "didn't know if [Repucci] was the victim of a crime, [or] if she had gotten into an altercation with the security [guards] at the medical center."

**¶3**         Anderson walked toward Repucci. He wore a standard police uniform, which consisted of patches on both shoulders identifying his police agency, a vest with "police" written on the front and back, his badge, and his name. When Repucci saw the officer approaching, she put her hands in the air and stopped screaming. Anderson repeatedly asked Repucci if she needed help, but she would not answer his questions. Moments later, still holding her hands in the air, Repucci told Anderson she would not speak to him, resumed screaming, and took a step toward the medical center's two security guards.

------

[1]         We view the facts in the light most favorable to sustaining the judgment. *State v. Mendoza*, 248 Ariz. 6, 11, ¶ 1, n.1 (App. 2019).

[2]         To protect the victim's identity, we refer to the officer using a pseudonym.

¶4        Suspecting Repucci intended to resume an earlier altercation with the guards, Anderson grabbed her wrist and told her to stay with him. Repucci immediately swung her right arm at Anderson, striking him in the head and shoulder with a one-pound water bottle. He quickly took her to the ground and told her that she was under arrest. On the ground, Repucci tucked her hands under her body and struggled with Anderson, ignoring his repeated commands to stop resisting. He eventually gained control of her right wrist and handcuffed her. Their entire encounter lasted roughly 30 seconds.

¶5        The State charged Repucci with two counts of aggravated assault on a peace officer, class 5 felonies (Count 1—striking Officer Anderson with the water bottle; Count 2—"pinching and/or scratching" Officer Anderson); resisting arrest, a class 6 felony (Count 3); and disorderly conduct, a class 1 misdemeanor (Count 4). At the trial, Repucci's defense was that she had protected herself after someone grabbed her in a dark, high-crime area. Repucci did not take the stand, but she presented a defense investigator who had worked previously as a California police officer. The investigator testified that when he was a police officer, he would not detain someone for screaming for an unknown reason absent some other crime being involved.

¶6        During the settling of the final jury instructions, the court granted Repucci's request for a self-defense instruction, based on the evidence showing Repucci was walking away when Officer Anderson grabbed her wrist. But the court denied Repucci's request for a crime-prevention instruction under A.R.S. § 13-411 because "there was [no] ongoing crime that the defendant was trying to prevent in striking the officer." When defense counsel countered that Repucci had been "assaulted," the court explained that it was "addressing [simple assault] through the self-defense" instruction, and defense counsel then replied, "I know. . . [but] we're told to ask for [the crime-prevention instruction] every time."

¶7        The jury found Repucci guilty on Counts 1, 3, and 4 but acquitted her on Count 2. The superior court suspended imposing a sentence on all counts and placed Repucci on concurrent probation terms totaling two years. Repucci appealed, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

**DISCUSSION[3]**

**¶8**        Challenging only the aggravated-assault conviction, Repucci argues the superior court improperly refused to give the crime-prevention instruction. She claims that her act of striking the officer was justified to prevent the crimes of aggravated assault, armed robbery, kidnapping, or sexual assault.

**¶9**        "Although we normally review denial of a jury instruction for an abuse of discretion, 'we independently assess whether the evidence supported a justification instruction, because that is a question of law and involves no discretionary factual determination.'" *State v. Pina-Barajas*, 244 Ariz. 106, 108, ¶ 4 (App. 2018) (quoting *State v. Almeida*, 238 Ariz. 77, 80, ¶ 9 (App. 2015)). "We view the evidence in the light most favorable to the party requesting a jury instruction." *Pina-Barajas*, 244 Ariz. at 108, ¶ 2.

**¶10**        A defendant is entitled to a justification instruction when "the slightest evidence" supports the asserted defense. *State v. Hussain*, 189 Ariz. 336, 337 (App. 1997). Still, courts need not provide an instruction that incorrectly states the law, does not fit the facts, or is covered by the other instructions. *Id.* at 337; *see also State v. Vassell*, 238 Ariz. 281, 284, ¶ 9 (App. 2015) (a justification instruction is not required unless the evidence "reasonably and clearly" supports it). In reviewing the superior court's denial of a justification instruction, we neither weigh the evidence nor resolve evidentiary conflicts. *Almeida*, 238 Ariz. at 80, ¶ 9. Instead, we decide only whether the record contains evidence "upon which the jury could rationally sustain the defense." *Id.* (quotation omitted).

**¶11**        The crime-prevention statute provides that a person is justified in using "physical force against another if and to the extent the

---

[3]        In her opening brief, Repucci argued that the resisting-arrest instruction violated Arizona Rule of Criminal Procedure 13.5(b) and her constitutional rights to notice by including a purportedly uncharged subsection of the resisting-arrest statute. Yet as she correctly concedes in her reply brief, her arguments are foreclosed by this court's recent decision in *State v. Luviano*, No. 2 CA-CR 2019-0102, 2021 WL 3909623, at *3, ¶¶ 11-13 (App. Sept. 1, 2021) (holding that the resisting-arrest statute identifies a unitary offense). Because Repucci has expressly withdrawn her challenges, we do not consider them. *See State v. Foshay*, 239 Ariz. 271, 273, ¶ 5, n.2 (App. 2016) (declining to consider an argument the appellant abandoned in the reply brief).

person reasonably believes that [such] force is immediately necessary" to prevent certain enumerated crimes. A.R.S. § 13-411(A) (including aggravated assault involving "serious physical injury" or the use of a "deadly weapon or dangerous instrument" under A.R.S. § 13-1204(A)(1)-(2), armed robbery, kidnapping, and sexual assault). Section 13-411(A) "requires an objective, third person measure of the reasonableness of a defendant's preventive force." *Korzep v. Super. Ct.*, 172 Ariz. 534, 540 (App. 1991).

**¶12** Because Repucci did not explicitly identify below the enumerated crimes under A.R.S. § 13-411(A) that supported her requested instruction, the parties dispute the standard of review we should apply to the armed-robbery, kidnapping, and sexual-assault theories advanced on appeal. Asserting that Repucci did not correctly preserve those issues for review, the State argues that fundamental-error review is appropriate. But Repucci contends we should review her arguments for harmless error. "Regardless of how an alleged error ultimately is characterized, however, a defendant on appeal must first establish that some error occurred." *State v. Diaz*, 223 Ariz. 358, 360, ¶ 11 (2010). Here, we conclude that no error occurred. Thus, the parties' standard-of-review debate is inconsequential, and we need not address it.

**¶13** The evidence did not support Repucci's aggravated-assault theory. *See* A.R.S. § 13-411(A) (restricting aggravated assault to A.R.S. § 13-1204(A)(1)-(2)). An aggravated assault under A.R.S. § 13-1204(A)(1) occurs when a person commits a misdemeanor assault, *see* A.R.S. § 13-1203, that causes serious physical injury. *See* A.R.S. § 13-105(39) ("Serious physical injury includes physical injury that creates a reasonable risk of death, or that causes serious and permanent disfigurement, serious impairment of health or loss or protracted impairment of the function of any bodily organ or limb."). A person violates A.R.S. § 13-1204(A)(2) by using a deadly weapon or dangerous instrument while committing a predicate assault. *See* A.R.S. § 13-105(12) (defining dangerous instrument), -105(15) (defining deadly weapon).

**¶14** The uncontested trial evidence established the following relevant facts: (1) Officer Anderson offered to help Repucci when he first approached her, wearing a uniform that visibly showed he was a police officer; (2) according to the security guards, Officer Anderson's demeanor was polite and non-threatening, but Repucci was "very belligerent," "kind of wild," and "trying to ignore the officer's commands"; (3) Repucci immediately raised her hands when she saw the officer, then refused to engage him in conversation; and (4) Officer Anderson grabbed her to

prevent a possible confrontation with the guards after she began screaming and moved toward them. Given these circumstances, a person in Repucci's situation could not reasonably believe that Officer Anderson's quick wrist grab posed a risk of death or serious bodily injury. *See* A.R.S. § 13-1204(A)(1). And Repucci does not cite, nor does the record contain, any evidence suggesting Officer Anderson used a deadly weapon or dangerous instrument in any way, much less to commit an underlying assault. *See* A.R.S. § 13-1204(A)(2).

¶15 That said, Repucci claims that "if the [perpetrator] inflicted enough injury, then it would be an aggravated assault." But her "speculation cannot substitute for evidence," *Vassell*, 238 Ariz. at 284, ¶ 9, and no evidence, direct or circumstantial, supports a reasonable belief that the wrist grab could have produced the suggested outcome.

¶16 Nor does the evidence support Repucci's contention that she was "standing in the dark" when an "unidentified man" grabbed her. Multiple witnesses reported that the bus stop's lighting was adequate. Both security guards testified that despite standing 80 feet away, they recognized Anderson as a police officer and could view the events clearly. *See id.* at 284-85, ¶¶ 11–12, 17 (a justification instruction is unwarranted when the supporting theory requires speculation that the defendant believes intruders entering his residence are home invaders rather than police officers). And the State introduced photographs of the bus stop that showed multiple streetlights illuminating the area at night.

¶17 Had Repucci testified in support of her justification defense, she might have presented evidence that based on what she saw and heard, the circumstances reasonably led her to believe immediate action was necessary to prevent an aggravated assault. *Cf. Hussain*, 189 Ariz. at 338 (concluding the defendant's version of events provided "the slightest evidence"). But she chose not to take the stand. The remaining evidence does not support an objectively reasonable belief that she was justified in trying to stop Officer Anderson from committing an aggravated assault. Moreover, even if the wrist grab might constitute misdemeanor assault, the superior court correctly determined that the self-defense instruction encompassed that theory. *See* A.R.S. § 13-411(A) (omitting misdemeanor assault); *Hussain*, 189 Ariz. at 338. Repucci has thus failed to establish she was entitled to the crime-prevention instruction because she hit the officer to thwart an aggravated assault.

¶18 To support her contention that she thought an armed robbery was imminent, she relies on defense counsel's comments during the closing

argument that Repucci was out at night in a high-crime area and anyone "can go out to any shop and buy a police shirt. How many times do cops come up to you and you put your hands up immediately? Someone's going to rob me." But the defense counsel's speculation about what Repucci might have believed or perceived is not evidence, let alone evidence that "reasonably and clearly" supports the requested instruction. *See Vassell*, 238 Ariz. at 284, ¶ 9. And Repucci's characterization of counsel's comments as reasonable inferences drawn from the evidence does not alter that conclusion. *See id.* (mere hypotheses "making an argument possible" does not satisfy the slightest-evidence standard).

**¶19** Likewise, there is no merit in Repucci's conclusory assertions—presented without citation to authority or supporting argument—that she was acting to prevent a kidnapping or sexual assault. Repucci makes no effort to explain how a person in her circumstances reasonably could have believed Officer Anderson's wrist grab amounted to the imminent commission of: (1) "a knowing restraint coupled with one or more of the specifically listed intentions," *State v. Eagle*, 196 Ariz. 188, 190, ¶ 7 (2000), thereby constituting kidnapping under A.R.S. § 13-1304; or (2) sexual assault under A.R.S. § 13-1406, meaning "intentionally or knowingly engaging in sexual intercourse or oral sexual contact" without the victim's consent. Thus, she has not shown error.

**¶20** Finally, Repucci misplaces her reliance on *Almeida* by arguing the superior court "erred in refusing to give the crime prevention instruction because it agreed to give a self-defense instruction." Despite Repucci's contrary assertion, the superior court did not conclude, in violation of *Almeida*, that the given self-defense instruction rendered the crime-prevention instruction unnecessary. *See Almeida*, 238 Ariz. at 81–82, ¶¶ 17–20. Repucci cites the court's comment that the self-defense instruction addressed her assault theory to support her claim. Given the context of the entire exchange, *see supra* ¶ 9, we construe the court's remark as referring to *misdemeanor assault*, which does not trigger the crime-prevention defense's protections. *See, e.g.*, *State v. Trostle*, 191 Ariz. 4, 22 (1997) (we presume trial judges know the law and apply it in making decisions).

## CONCLUSION

¶21         We affirm Repucci's convictions.



AMY M. WOOD • Clerk of the Court
FILED:    AA