861 P.2d 654

**STATE of Arizona, Appellee,**

v.

**Rudi Alfred APELT, Appellant.**

**No. CR–91–0025–AP.**

Supreme Court of Arizona,
En Banc.

Nov. 9, 1993.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section and Joseph T. Maziarz, Phoenix, for State of Ariz.

William C. Haus, Apache Junction, for Rudi Alfred Apelt.

## OPINION

MARTONE, Justice.

The defendant, Rudi Apelt, was found guilty of premeditated first degree murder and conspiracy to commit first degree murder, and he was sentenced to death. The murder conviction and death sentence were automatically appealed to this court pursuant to Rules 26.15 and 31.2(b), Ariz.R.Crim.

P., and A.R.S. § 13–4031.[1] We now affirm defendant's conviction and sentence.

## I. *BACKGROUND*

Most of the facts relevant to this appeal are summarized in the companion case, *State v. Michael Apelt,* 176 Ariz. 349, 861 P.2d 634 (1993). Additional facts are stated throughout.

## II. *ISSUES*

We address the following issues:

### A. *Trial Issues*

1. Did the trial court err by denying defendant's motion for a directed verdict of acquittal?

2. Did the trial court err by refusing to conduct an *ex parte* hearing during which defendant could request funds for expert assistance?

3. Was defendant denied effective assistance of counsel?

### B. *Sentencing Issues*

1. Did the trial court err by refusing to fund a trip to Germany by defense counsel to look for mitigating evidence?

2. Was the death sentence appropriate?

a. Did the trial court err by finding aggravating factors?

b. Did the trial court err by finding that there were no mitigating factors sufficient to require leniency?

### C. *Other Issues*

In addition to the above, Rudi makes the following claims of error, all of which are meritless and do not warrant separate discussion.

1. The trial court erred by denying defendant's motion for a redetermination of probable cause because his attorney's joint representation of him and Michael at the preliminary hearing deprived defendant of his right to effective assistance of counsel. *State v. Charo,* 156 Ariz. 561, 566, 754 P.2d 288, 293 (1988) ("the issue of probable cause is a closed question after the jury determines a defendant's guilt beyond a reasonable doubt").[2]

2. Evidence of the Apelts' shopping sprees and their relationships with women should have been excluded under Rule 404(b), Ariz.R.Evid. *See State v. Romero,* 130 Ariz. 142, 144, 634 P.2d 954, 956 (1981) (trial court has broad discretion in admitting evidence of relevant prior bad acts).

3. The trial court should have instructed the jury on the lesser included offense of second degree murder. *See State v. Clabourne,* 142 Ariz. 335, 345, 690 P.2d 54, 64 (1984) (instruction on lesser included offenses inappropriate in absence of evidence supporting the lesser offense).

4. Arizona's death penalty statute is unconstitutional because:

▆ (a) It does not require the trial court to make detailed factual findings in its special verdict. *See State v. Walton,* 159 Ariz. 571, 585, 769 P.2d 1017, 1031 (1989) (statute not constitutionally invalid for failing to require more detailed factual finding), *aff'd,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990).

▆ (b) It mandates a sentence of death whenever at least one aggravating factor and no mitigating factors are found. *See State v. Gillies,* 142 Ariz. 564, 568, 691 P.2d 655, 659 (1984) (mandatory nature of Arizona's capital sentencing structure is constitutional because defendant may raise

---

1. The state points out, and defendant concedes, that no notice of appeal was filed from the conspiracy conviction and sentence. Therefore, we confine our review to the murder conviction and sentence.

2. Defendant does not claim that the alleged denial of effective assistance of counsel actually affected the verdict but merely the finding of probable cause. *See Coleman v. Alabama,* 399 U.S. 1, 10–11, 90 S.Ct. 1999, 2004, 26 L.Ed.2d 387 (1970) (accused has Sixth/Fourteenth Amendment right to the assistance of counsel at the preliminary hearing). In the course of searching the record for fundamental error, we have concluded that any such claim would be meritless under the *Strickland v. Washington* analysis. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

any relevant factor in mitigation), *cert. denied*, 470 U.S. 1059, 105 S.Ct. 1775, 84 L.Ed.2d 834 (1985).

■ (c) The judge rather than the jury determines the existence of aggravating and mitigating factors in violation of defendant's Sixth and Fourteenth Amendment rights. *See Walton v. Arizona*, 497 U.S. 639, 649, 110 S.Ct. 3047, 3054–55, 111 L.Ed.2d 571 (1990) (Arizona's death penalty scheme not unconstitutional because judge makes these findings).

■ (d) The death penalty is per se unconstitutional because it is cruel and unnecessary to achieve the legislature's objectives. *See Gregg v. Georgia*, 428 U.S. 153, 185–87, 96 S.Ct. 2909, 2931, 49 L.Ed.2d 859 (1976) (death penalty for murder is not per se cruel and unusual).

(e) It discriminates against young, poor, male defendants. *See McCleskey v. Kemp*, 481 U.S. 279, 292–93, 107 S.Ct. 1756, 1767, 95 L.Ed.2d 262 (1987) (defendant must prove purposeful discrimination in his case to prevail on such a claim; statistical evidence is not sufficient); *State v. White*, 168 Ariz. 500, 513, 815 P.2d 869, 882 (1991) (Arizona death penalty statute does not deprive male defendants of equal protection), *cert. denied*, —— U.S. ——, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992).

■ 5. The trial court should have authorized defendant to obtain information regarding all Arizona first degree murder cases so that he could prove his sentence is disproportionate. *State v. Greenway*, 170 Ariz. 155, 171, 823 P.2d 22, 38 (1991) (not appropriate for trial court to consider sentences imposed in other cases when sentencing defendant); *State v. Salazar*, 173 Ariz. 399, 417, 844 P.2d 566, 584 (1992) (defendant not entitled to proportionality review by appellate court), *cert. denied*, —— U.S. ——, 113 S.Ct. 3017, 125 L.Ed.2d 707 (1993).

6. Defendant's sentence is excessive and disproportionate. *See Salazar*, 173 Ariz. at 417, 844 P.2d at 584.

## III. *ANALYSIS*

### A. *Trial Issues*

#### 1. *Sufficiency of the Evidence*

■ Rudi claims that the trial court erred by denying his Rule 20 motion for a directed verdict of acquittal. We have stated:

> A judgment of acquittal is appropriate when "no substantial evidence [exists] to warrant a conviction." Substantial evidence is more than a mere scintilla and is such proof that "reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt."

*State v. Nunez*, 167 Ariz. 272, 278, 806 P.2d 861, 867 (1991) (citations omitted). In reviewing the trial court's ruling on a Rule 20 motion, we view the evidence and the inferences that can be drawn from the evidence in the light most favorable to sustaining the verdict. *State v. Guerra*, 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989).

■ The evidence introduced at Rudi's trial was sufficient to prove that Michael pressured Cindy into buying life insurance in November so he could kill her and collect the proceeds. In early December, when Michael believed the $400,000 policy was in effect, Rudi and Anke reserved a rental car with a large trunk, far more suitable for transporting a body or a bound person than Cindy's small Volkswagen was. The reservation was cancelled after Michael found out that the insurance company would not issue the large policy. Therefore, the jury could have found that the agreement to kill Cindy was formed between Michael and Rudi in early December. Indeed, Michael's marriage proposal to a woman just a few days after meeting her, and Rudi's attempt to get Annette to secretly marry him, suggest that a plan to marry, insure, and murder someone was formed much earlier.

Michael discussed the murder with Rudi several hours before it took place, at which time Rudi agreed to participate in it. Rudi and Anke then waited in the rental car and followed Michael when he drove past. Rudi took the lead and turned off the road

before Michael, demonstrating a prearranged site. This evidence was clearly sufficient to demonstrate Rudi's intent and premeditation.

Even if we assume that Michael actually stabbed Cindy, the evidence was sufficient to allow the jury to find that Rudi agreed to help Michael commit the offense and that he followed Michael to the desert in an attempt to participate in the killing. The evidence was sufficient to allow the jury to conclude that Rudi "agreed to aid or attempted to aid" Michael in the murder and thus find him guilty as an accomplice. A.R.S. § 13–301(2); *see also* A.R.S. § 13–303. The jury was properly instructed on accomplice liability.

### 2. *Denial of Request for ex parte Hearing*

■ Rudi asked that the trial court hold an *ex parte* hearing at which he could present a request for expert assistance under A.R.S. § 13–4013 without "tipping his hand" to the prosecution. The trial court denied the request, noting that there was no authority for such a hearing. Therefore, it would violate Canon 3(A)(4) of the Code of Judicial Conduct, which forbids *ex parte* proceedings except as authorized by law. Defendant claims that this denial was error and deprived him of the opportunity to request expert assistance.

In the companion case, we rejected the claim that a defendant has a constitutionally guaranteed right to present requests for expert assistance *ex parte*. *Michael Apelt,* 176 Ariz. at 365, 861 P.2d at 650. Even if defendant had such a right, he could not show prejudice from the denial of it in this case. After his request for an *ex parte* hearing was denied, his request for the expert assistance of a pathologist was granted.

### 3. *Ineffective Assistance of Counsel*

The theory of Rudi's defense was that Michael killed Cindy before Rudi arrived at the murder scene. To bolster this theory,

the defense called Dr. Vincent DiMaio, a forensic pathologist, to testify that Cindy's wounds (both bruises and knife wounds) were consistent with a single assailant. Dr. DiMaio also testified, on direct examination, that the assailant was probably right-handed. The prosecution further explored this on cross-examination and then called two witnesses—a documents analyst and Anke Dorn—who testified that Michael is left-handed and Rudi is right-handed. Instead of helping the defendant's case, Dr. DiMaio's testimony could have damaged it. Defendant claims that the presentation of damaging evidence, as well as counsel's failure to file a timely notice of appeal from his conspiracy conviction and sentence, constituted ineffective assistance of counsel.

■ We have recommended that defendants raise ineffective assistance of counsel claims in a Rule 32 petition for post-conviction relief so that, if colorable, an evidentiary hearing can be held. *State v. Valdez,* 160 Ariz. 9, 15, 770 P.2d 313, 319 (1989).[3] We will not reverse a conviction because of claimed ineffective assistance of counsel absent such a hearing, but will reach and decide the claim if the record clearly shows that the claim is meritless. *State v. Carver,* 160 Ariz. 167, 175, 771 P.2d 1382, 1390 (1989). Because no evidentiary hearing has been held in this case, and we cannot say that the defendant's claim of ineffective assistance is clearly meritless, we decline to reach the issue.

### B. *Sentencing Issues*

### 1. *Denial of Motion for Extraordinary Expenses*

■ After trial, defendant asked the court to authorize travel to Germany at county expense to look for mitigating evidence. His motion did not describe the evidence he hoped to find. It just stated that "Rudi Apelt was born and raised in Germany and came to this country in September, 1988. His mother and other imme-

---

**3.** Of course, upon issuance of a mandate affirming a conviction and death sentence on direct appeal, the clerk now files an automatic notice for post-conviction relief. Rule 32.4(a), Ariz. R.Crim.P.

diate family currently reside in Dusseldorf, Germany. Furthermore, other acquaintances, employers, and personal friends reside in Germany."

After this motion was denied, defendant filed a motion for reconsideration in which he stated:

Counsel has learned that the defendant's childhood was marked by extreme conflict with his father. This conflict was tied to his relationship with his brother, Michael, and may provide important information to be considered by an appropriate mental health expert. The defendant was placed in a psychiatric institution in Duesseldorf, Germany, and the records of that institution will be crucial to the preparation for the aggravation-mitigation hearing as will interviews with the staff of the institution and the family of the Defendant.

In addition, the Defendant has given counsel the names of several witnesses whom he believes would testify favorably for him as concerns his prior history and relationship with his brother, Michael.

(Record on Appeal at 1065.) The state opposed the motion and argued that any needed information could be obtained through less costly means, such as by telephone or mail. Defendant contends that the trial court erred in denying his request.

█ A.R.S. § 13–4013(B) provides that an indigent defendant charged with a capital offense is entitled to county-funded investigators and expert witnesses that are "reasonably necessary adequately to present his defense at trial and at any subsequent proceeding." A defendant has a due process right to such assistance upon a similar showing of necessity. *See State v. Knapp,* 114 Ariz. 531, 540–41, 562 P.2d 704, 713–14 (1977) (defendant is not entitled to funds merely upon application but must make a showing, under either statute or due process clause, that the requested assistance is reasonably necessary), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978); *Moore v. Kemp,* 809 F.2d 702, 712 (11th Cir.1987) (defendant must demonstrate how the requested assis-

tance would be beneficial and why it is necessary for a fair trial), *cert. denied,* 481 U.S. 1054, 107 S.Ct. 2192, 95 L.Ed.2d 847 (1987). Mere "undeveloped assertions that the requested assistance would be beneficial" are not enough. *Caldwell v. Mississippi,* 472 U.S. 320, 323 n. 1, 105 S.Ct. 2633, 2637 n. 1, 86 L.Ed.2d 231 (1985).

Whether a defendant makes an adequate showing of reasonable necessity is a decision generally left to the discretion of the trial judge. "In order to find an abuse of discretion, we must determine that the denial or restriction of investigative funds substantially prejudiced the defendant." *Clabourne,* 142 Ariz. at 342, 690 P.2d at 61; *see also, State v. Amaya–Ruiz,* 166 Ariz. 152, 182, 800 P.2d 1260, 1290 (1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2044, 114 L.Ed.2d 129 (1991).

We find no abuse of discretion. Defendant's initial request failed to describe the evidence he believed was available in Germany. Although his motion for reconsideration mentioned the need to acquire evidence regarding his prior psychological hospitalization and his relationship with his father and brother, he failed to explain why it was necessary to travel to Germany to obtain it. He therefore failed to make the initial showing of need required by both the statute and due process.

In addition, he has failed to show prejudice. He presented psychiatric evidence of his relationship with his father and brother and its effect on his mental state at the time of the murder. The psychiatrist's testimony was based on his examination of defendant, a 1.5 hour telephone interview with defendant's mother, and records from a psychiatric clinic in Dusseldorf stating that Rudi was a patient there from February 5, 1980, to May 2, 1980. Even though the psychiatrist noted that the absence of more detailed records of the prior hospitalization made it difficult to evaluate defendant's mental health history, it did not prevent him from giving opinions on defen-

dant's psychological condition at the time of the murder.[4]

### 2. *Propriety of the Death Sentence*

■ The state has the burden of proving beyond a reasonable doubt the existence of the aggravating circumstances contained in A.R.S. § 13–703(F). A.R.S. § 13–703(C); *State v. Jordan,* 126 Ariz. 283, 286, 614 P.2d 825, 828 (1980), *cert. denied,* 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980). The defendant has the burden of proving by a preponderance of the evidence the existence of any statutory or non-statutory mitigating circumstances. A.R.S. § 13–703(C); *State v. McMurtrey,* 143 Ariz. 71, 73, 691 P.2d 1099, 1101 (1984). The trial court must impose a sentence of death if it finds at least one aggravating circumstance and no mitigating circumstances sufficient to call for leniency. A.R.S. § 13–703(E). This court does not defer to the trial court's findings on aggravating and mitigating circumstances but, rather, conducts an independent review of the propriety of the sentence. *State v. White,* 168 Ariz. 500, 510, 815 P.2d 869, 879 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992).

### a. *Aggravating Factors*

The trial court found that Rudi committed the offense in expectation of the receipt of something of pecuniary value (A.R.S. § 13–703(F)(5)) and in an especially heinous, cruel or depraved manner (A.R.S. § 13–703(F)(6)).

■ Defendant argues that the evidence presented at trial and sentencing supports the conclusion that he agreed to participate in the murder to go along with Michael, and not for the purpose of pecuniary gain. Anke Dorn testified as follows about Michael's conversation with her and Rudi on the day of the murder:

Q. What else did Michael say to you about the insurance papers?

A. He said that if they would kill Cindy they would get a lot of money, if they would kill Cindy they would get a lot of money and we would be safe and Rudi doesn't have to work, Michael doesn't have to work any more. And so then—

\* \* \* \* \* \*

A. ... He just, he tried to get Rudi into this, Michael tried to get Rudi into this. Just we can buy everything what we want and do what we want. And he just try to talk Rudi into this.

(R.T. of August 22, 1990, at 71–72.) We believe this evidence demonstrates that, even if Rudi participated in the murder only after being persuaded to do so by Michael, one of his motivations was pecuniary. *See State v. Greenway,* 170 Ariz. 155, 164, 823 P.2d 22, 31 (1991) (indicating that pecuniary gain need not be the sole motivation for the murder). This was the bait offered by Michael, and it is logical to conclude that Rudi accepted it. We find that the state proved this aggravating factor beyond a reasonable doubt.

■ We also find, for the reasons stated in the companion case, that the murder was committed in an especially cruel manner. *Michael Apelt,* 176 Ariz. at 367, 861 P.2d at 652. Defendant argues, however, that the cruelty of the killing cannot be attributed to him because the court cannot find, beyond a reasonable doubt, that he participated in the actual killing.

■ In contrast to heinousness and depravity, cruelty focuses on the suffering of the victim rather than on the actions or mental state of the defendant. The cruelty of the killing is attributable to the defendant if he knew or should have known that the victim would suffer. *Greenway,* 170 Ariz. at 166, 823 P.2d at 33; *State v. McCall,* 139 Ariz. 147, 161, 677 P.2d 920, 934 (1983), *cert. denied,* 467 U.S. 1220, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1984). The evidence in this case established that Rudi knew Michael was to transport Cindy to the desert where they would kill her, and that

---

4. It is unclear why defendant did not obtain his hospital records. If his counsel made no effort to obtain those records (other than requesting a trip to Germany to obtain them personally), this is a matter that may be considered in a Rule 32 proceeding. However, it is impossible to conclude on this record that the absence of the psychiatric records was prejudicial.

Michael would ensure that Cindy could not see where she was going. Therefore, Rudi knew, or should have known, that Cindy would suffer great physical or mental anguish in the course of her kidnapping and murder.

### b. *Mitigating Factors*

■ Dr. Bindelglass, the defense psychiatrist, testified that Rudi had a pattern of doing "almost automatically" whatever Michael told him to do. The pattern developed because Rudi was severely beaten by his father whenever he failed to keep his younger brother, Michael, quiet and out of his father's way. Dr. Bindelglass testified that Rudi would be unable to conform his conduct to the requirements of the law if his brother's wishes were to the contrary (a mitigating circumstance under A.R.S. § 13–703(G)(1)). Dr. Bindelglass conceded, however, that Rudi was not suffering from any recognizable mental illness at the time of the murder.

Dr. Don, the state's psychiatrist, disagreed with Dr. Bindelglass. He testified that there was no evidence that Rudi was suffering from any symptoms at the time of the murder that would indicate a mental illness, and that a mental illness or defect of some sort is necessary before one's ability to understand or control one's conduct can be considered "impaired." It was therefore his opinion that Rudi was not impaired. He also noted that Rudi's statements to Dr. Bindelglass regarding his relationship with his brother and father, having been made during an interview for sentencing purposes, were less reliable than statements made for the purpose of therapy.

Defendant also argued at sentencing that the following mitigating circumstances existed: (1) he acted under unusual and substantial duress (A.R.S. § 13–703(G)(2)); (2) he was convicted on an accomplice theory and his participation in the murder was relatively minor (A.R.S. § 13–703(G)(3)); (3) he felt great remorse over his inability to stop Michael from killing Cindy; (4) according to Dr. Bindelglass' testimony, he had a good possibility of rehabilitation if he was not around Michael; and (5) he had demonstrated a great concern for others and sporadically had attempted to thwart his brother's plans, *e.g.,* by protecting Anke from Michael's attacks and resisting Michael's attempts to take out insurance on him and Anke.

The trial court found no statutory mitigating circumstances to exist and found the proffered non-statutory mitigating circumstances insufficient to call for leniency. Defendant argues that the trial court erred by failing to find that his capacity to conform his conduct to the requirements of the law was significantly impaired (a mitigating circumstance under § 13–703(G)(1)).

■ We agree with the trial court that defendant failed to prove this mitigating circumstance. As we have stated in previous cases, a character or personality disorder is not generally sufficient to satisfy the statute. *State v. Brewer,* 170 Ariz. 486, 505, 826 P.2d 783, 802, *cert. denied,* —— U.S. ——, 113 S.Ct. 206, 121 L.Ed.2d 147 (1992). Normally, some identifiable mental disease or psychological defect must exist before we consider a defendant's capacity "significantly impaired." *Id.* Both psychiatrists in this case agreed that defendant was not suffering, at the time of the murder, from any such identifiable disease. *See State v. (Ricky) Tison,* 129 Ariz. 526, 544, 633 P.2d 335, 353 (1981), *cert. denied,* 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982); *State v. (Raymond) Tison,* 129 Ariz. 546, 555, 633 P.2d 355, 364 (1981) (court held that co-felon/father's influence over his sons did not constitute a mitigating factor for them), *cert. denied,* 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982).

■ We have independently reviewed the evidence of the other mitigating factors offered by defendant at the sentencing hearing. We agree with the trial court that defendant failed to prove any mitigating factors that, either individually or collectively, are sufficiently substantial to call for leniency in light of the two aggravating factors.

Although defendant argued that his participation in the murder was relatively mi-

nor, a great deal of evidence in this case indicates otherwise. His proposal of a secret marriage to Annette shows that he and Michael were plotting, long before Cindy's murder, to find a woman to marry one of them so they could insure and kill her. The proposal could hardly have been genuine. In addition, his reservation of the rental car with the large trunk in early December indicates that he was in league with Michael.

It is also difficult to imagine an innocent explanation for the fact that, although he and Anke saw Michael nearly every day, they never interacted with Cindy but instead played along with the story that they had returned to Germany. Rudi must have known that this could not go on forever. It is hard to believe he was unaware of what its resolution would be. Rudi's argument that he was a minor participant is also undercut by his conviction of conspiracy to commit murder.

Given the facts, we cannot conclude that it is more likely than not that Rudi's participation was minor. Defendant's other mitigation arguments are essentially variations on this same theme. They all revolve around his claim, presented through the testimony of Dr. Bindelglass, that he was Michael's pawn, unaware of Michael's intentions until shortly before the murder and unable to resist his influence at that time. There is little aside from Rudi's statements to support this claim. Although Michael appears to have taken a more active role at times, such as by getting the insurance and initiating the shopping sprees, this may be no more than a function of the fact that he found a woman to marry him before Rudi did, spoke better English than did Rudi, and had access to a car.

Having found no mitigating factors sufficiently substantial to call for leniency in light of the two aggravating factors, we affirm defendant's sentence.

## IV. *DISPOSITION*

We have examined the record for fundamental error as required by A.R.S. § 13-4035 and find none. For the above reasons, we affirm Rudi Apelt's conviction and sentence.

FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN and ZLAKET, JJ., concur.