SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No. CV-05-0397-SA |
| Petitioner, | ) | |
| | ) | Pinal County |
| v. | ) | Superior Court |
| | ) | No. CR-14946 |
| THE HONORABLE SILVIA R. ARELLANO, | ) | |
| JUDGE OF THE SUPERIOR COURT OF | ) | |
| ARIZONA, in and for the County | ) | |
| of Pinal, | ) | **O P I N I O N** |
| | ) | |
| Respondent, | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| MICHAEL APELT and RUDI APELT, | ) | |
| | ) | |
| Real Parties in Interest. | ) | |
| | ) | |
| _____ | ) | |

Special Action from the Superior Court in Pinal County
The Honorable Silvia R. Arellano, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED IN PART; REMANDED**
_____

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                    Phoenix
      By   Kent E. Cattani, Chief Counsel
           Capital Litigation Section
           Patricia A. Nigro, Assistant Attorney General
Attorneys for State of Arizona

DANA CARPENTER                                             Phoenix
Attorney for Michael Apelt

JON M. SANDS, FEDERAL PUBLIC DEFENDER                      Phoenix
      By   Michael L. Burke, Assistant Federal Public Defender
Attorneys for Rudi Apelt

McDERMOTT WILL & EMERY LLP                            Washington, DC
      By   Douglas G. Edelschick

And

SNELL & WILMER LLP                                        Phoenix
      By    Daniel J. McAuliffe
            Kim S. Magyar
Attorneys for Amicus Curiae American Association on Mental
Retardation; Amicus Curiae The ARC of the United States; and
Amicus Curiae The ARC of Arizona

_____

**M c G R E G O R**, Chief Justice

¶1      The State brought this special action to resolve questions relating to the procedure and evidence involved in hearings held on mental retardation in capital cases pursuant to Arizona Revised Statutes (A.R.S.) section 13-703.02 (Supp. 2005). We consider (1) whether a trial judge may determine that a defendant has established a rebuttable presumption of mental retardation by considering only expert reports of intelligence quotient (IQ) scores and (2) whether testimony from lay witnesses regarding a defendant's present adaptive behavior is relevant to a determination of mental retardation. We hold that a defendant can establish a rebuttable presumption of mental retardation through IQ scores and that evidence from lay witnesses of post-age-eighteen adaptive behavior may be relevant to a determination of mental retardation.

**I.**

¶2      Michael and Rudi Apelt are brothers and German citizens who were sentenced to death for the murder of Cindy

Monkman.[1]  Between August and October of 1988, "the brothers met and 'conned' a series of women" to obtain "money and other assistance."  *State v. Michael Apelt*, 176 Ariz. 349, 353, 861 P.2d 634, 638 (1993).  As part of their plan, the Apelts looked for a woman to marry Michael.  *Id.*  During this time, Michael and Rudi met Cindy Monkman at a bar and claimed to be computer and banking experts.  *Id.*  After having known each other for less than a month, Cindy and Michael were married in Las Vegas. *Id.* at 354, 861 P.2d at 639.  Ten days later, at Michael's suggestion, they applied for life insurance policies on Cindy's life, totaling $400,000.  *Id.*  The day after the life insurance policies were approved, Michael and Rudi murdered Cindy.  *Id.* at 354-55, 861 P.2d at 639-40.  A jury found Michael and Rudi guilty of first degree murder and conspiracy to commit first degree murder, and the trial judge sentenced the brothers to death for the murder convictions.  *State v. Rudi Apelt*, 176 Ariz. 369, 371, 861 P.2d 654, 656 (1993); *Michael Apelt*, 176 Ariz. at 357, 861 P.2d at 642.  This Court subsequently affirmed Michael's and Rudi's convictions and sentences.  *Rudi Apelt*, 176 Ariz. at 372, 861 P.2d at 657; *Michael Apelt*, 176 Ariz. at 353,

---

[1]   Because the facts of this case have already been treated in depth in the Apelts' capital appeal opinions, we only briefly recount the facts of the murder of Cindy Monkman.  For a more detailed description, see *State v. Rudi Apelt*, 176 Ariz. 369, 861 P.2d 654 (1993), and *State v. Michael Apelt*, 176 Ariz. 349, 861 P.2d 634 (1993).

3

861 P.2d at 638.

¶3       Following the United States Supreme Court ruling in *Atkins v. Virginia*, 536 U.S. 304 (2002), which held that the Eighth Amendment prohibits executing mentally retarded defendants, the Apelts filed petitions for post-conviction relief claiming that they are mentally retarded. *See* Ariz. R. Crim. P. 32.  As required by statute, both State and defense psychological experts evaluated the Apelts to determine whether they are mentally retarded.  *See* A.R.S. § 13-703.02.B-.D. During the proceedings held under section 13-703.02, the trial court entered two orders that led to this special action. First, the court found that the Apelts had established a rebuttable presumption of mental retardation.  Second, the court granted in part the Apelts' request that the court preclude testimony by employees of the Arizona Department of Corrections (ADOC) about the Apelts' present adaptive behavior.

¶4       The State challenged those rulings by filing a special action petition with this Court rather than with the Court of Appeals, which could have exercised jurisdiction.  *See* A.R.S. § 12-120.21.A.4 (2003).  Although the Court of Appeals lacks jurisdiction over *direct appeals* from death sentences, section 12-120.21.A.4 grants the Court of Appeals "[j]urisdiction to hear and determine petitions for special actions brought pursuant to the rules of procedure for special actions, *without*

4

*regard to its appellate jurisdiction.*" (Emphasis added.) This grant to the Court of Appeals of broad jurisdiction over special actions necessarily includes special actions arising out of capital cases. *See Hurles v. Superior Court*, 174 Ariz. 331, 331 n.1, 849 P.2d 1, 1 n.1 (App. 1993). In most circumstances, a petitioner, including a petitioner involved in capital litigation, should file a special action in the Court of Appeals. Nevertheless, we accepted jurisdiction because the Supreme Court's opinion in *Atkins* has raised questions of statewide importance, including the issues raised in this case, concerning the procedure for mental retardation hearings and the application and interpretation of A.R.S. § 13-703.02. We therefore exercise jurisdiction pursuant to Article 6, Section 5.3, of the Arizona Constitution.

## II.

¶5      The legislature defined the procedure for determining whether a defendant in a capital case has mental retardation in A.R.S. § 13-703.02. As the State concedes, this statute applies to all capital sentencing proceedings, including post-conviction proceedings brought to determine whether a defendant meets the statutory definition of mental retardation. *See* A.R.S. § 13-703.02.J (stating that section 13-703.02 applies to all capital sentencing proceedings); *State v. Dann*, 206 Ariz. 371, 375 ¶ 15 n.3, 79 P.3d 58, 62 n.3 (2003) (citing 2002 Ariz. Sess. Laws,

5

5th Spec. Sess., ch. 1, § 4, and noting that A.R.S. § 13-703.02 was amended to apply to all capital sentencing and resentencing proceedings).

¶6        The statute requires that psychological experts determine the defendant's IQ before the trial court considers the issue of mental retardation.   A.R.S. § 13-703.02.B-.D. After the experts submit their reports to the trial court,

> the trial court shall hold a hearing to determine if the defendant has mental retardation.  At the hearing, the defendant has the burden of proving mental retardation by clear and convincing evidence.   A determination by the trial court that the defendant's intelligence quotient is sixty-five or lower establishes a rebuttable presumption that the defendant has mental retardation.

A.R.S. § 13-703.02.G.

¶7        The trial court considered reports submitted by psychological experts for the State and for the defense.   *See* A.R.S. § 13-703.02.G.   All of the experts opined that Michael and Rudi have IQs of sixty-five or lower.  On the basis of those opinions, the trial court determined that the defendants had established rebuttable presumptions of mental retardation.

¶8        While the State concedes that an IQ of sixty-five or below establishes a rebuttable presumption of mental retardation, the State claims that the trial court abused its discretion by determining that the Apelts were entitled to such a presumption before conducting an evidentiary hearing.   In

6

making its ruling, the trial court stated that "[b]ecause application of the presumption may affect the order in which evidence is presented, it is logical to construe this statutory language as permitting the pre-hearing determination of whether or not the presumption applies."

¶9     We review the interpretation of statutes de novo. *Pima County v. Pima County Law Enforcement Merit Sys. Council*, ___ Ariz. ___, ___ ¶ 13, 119 P.3d 1027, 1030 (2005). "We interpret statutes to give effect to the legislature's intent. When a statute is clear and unambiguous, we apply its plain language and need not engage in any other means of statutory interpretation." *Kent K. v. Bobby M.*, 210 Ariz. 279, 283 ¶ 14, 110 P.3d 1013, 1017 (2005).

¶10    We conclude that the statute permits a trial court to find that a defendant has established a rebuttable presumption of mental retardation based solely on experts' reports of a defendant's scores on IQ tests. The statute places no limitation on the authority of a trial court to make that determination. In addition, although the statute does not define when a trial court is to make its initial determination, subsection F indicates that the legislature intended the court to make some preliminary determinations in reliance upon IQ scores. Subsection F states, "If the scores on all the tests for intelligence quotient administered to the defendant are

7

above seventy, the notice of intent to seek the death penalty shall not be dismissed on the ground that the defendant has mental retardation." A.R.S. § 13-703.02.F. This language directs the trial court to make a preliminary determination of whether to foreclose dismissal of the death penalty on the ground of mental retardation by considering IQ scores only. We think that the legislature intended that the converse also be true: The trial court should be able to determine whether a defendant has established a rebuttable presumption of mental retardation by relying on the defendant's IQ scores, at least when all experts agree that the IQ scores are sixty-five or lower.

¶11 Rebuttable presumptions are commonly used in criminal cases. *See, e.g.*, *Guthrie v. Jones*, 202 Ariz. 273, 277 ¶ 18, 43 P.3d 601, 605 (App. 2002) (discussing rebuttable presumption of intoxication or non-intoxication in prosecutions for driving under the influence); *Korzep v. Superior Court*, 172 Ariz. 534, 539, 838 P.2d 1295, 1300 (App. 1991) (noting that A.R.S. § 13-411.C provides a rebuttable presumption of reasonable conduct when one acts to prevent commission of certain enumerated offenses); *State v. Fields*, 117 Ariz. 319, 321, 572 P.2d 453, 455 (App. 1977) (discussing rebuttable presumption of a defendant's sanity). A rebuttable presumption, however, "vanishes when the state provides contradictory evidence."

8

*Korzep*, 172 Ariz. at 539, 838 P.2d at 1300; *see also State v. Grilz*, 136 Ariz. 450, 455, 666 P.2d 1059, 1064 (1983) (once a defendant produces evidence sufficient to raise reasonable doubt as to sanity, the presumption disappears entirely).

¶12     Moreover, "a presumption or inference does not shift the burden of proof, but only aids [a party] in maintaining its burden." *State v. Knaubert*, 27 Ariz. App. 53, 60, 550 P.2d 1095, 1102 (1976) (stating that the existence of a presumption of sanity does not alter the State's burden); *see also State v. Hyde*, 186 Ariz. 252, 266, 921 P.2d 655, 669 (1996) (distinguishing between the burden of going forward, which "requires the party that bears it to produce sufficient preliminary evidence," and the burden of persuasion, which "requires the party that bears it to persuade the trier of fact to rule in its favor"). Like the presumption of sanity in criminal cases, the rebuttable presumption of mental retardation that arises under section 13-703.02.G merely affects who must go forward with evidence and does not shift the burden of persuasion. In mental retardation hearings, therefore, the defendant maintains the burden of proving mental retardation. Indeed, any other conclusion would be inconsistent with the clear statutory language of section 13-703.02.G: "At the hearing, the defendant has the burden of proving mental retardation by clear and convincing evidence."

9

¶13      In this case, the trial court made a preliminary determination that the defendants' IQ scores established rebuttable presumptions of mental retardation. Therefore, the trial court must find the defendants are mentally retarded if the State fails to present any evidence to challenge that conclusion. The presumption of mental retardation based on the IQ scores vanishes, however, if the State presents evidence that calls into question the validity of the IQ scores or tends to establish that either defendant does not otherwise meet the statutory definition of "mental retardation." *See* A.R.S. § 13-703.02.K.2 (defining "mental retardation" as also including significant impairment in adaptive functioning and onset before age eighteen). At that point, the IQ scores serve as evidence of mental retardation, to be considered by the trial court with all other evidence presented. We find no error in the trial court's determination that the Apelts established a rebuttable presumption of mental retardation prior to an evidentiary hearing.

### III.

¶14      The State also challenges the trial court's order preventing the State from presenting testimony from ADOC personnel regarding the Apelts' current communication, social, and interpersonal skills, as well as testimony relating to their work, leisure, and health habits. In a pre-hearing ruling, the

10

trial court precluded direct testimony from ADOC employees "to the extent that such testimony is offered to show Defendant's present adaptive behavior in prison."[2] The court based this ruling on its interpretation of section 13-703.02.K and concluded that any adaptive behavior that occurs after the age of eighteen is not relevant to a determination of mental retardation. "Evidentiary rulings are subject to the trial court's determination and will not be disturbed, absent an abuse of discretion." *State v. Jones*, 197 Ariz. 290, 308 ¶ 47, 4 P.3d 345, 363 (2000). An abuse of discretion occurs when "the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice." *State v. Chapple*, 135 Ariz. 281, 297 n.18, 660 P.2d 1208, 1224 n.18 (1983).

¶15 We begin our analysis by considering the statutory language. Section 13-703.02.K.2 defines mental retardation as "a mental deficit that involves significantly subaverage general intellectual functioning, existing concurrently with significant impairment in adaptive behavior, where the onset of the foregoing conditions occurred before the defendant reached the age of eighteen." The statute defines adaptive behavior, in

---

[2] The court also ruled that "[a]ny other use of such testimony, either as support for an expert's opinion on mental retardation, or as it might specifically rebut defense testimony

11

turn, as "the effectiveness or degree to which the defendant meets the standards of personal independence and social responsibility expected of the defendant's age and cultural group." A.R.S. § 13-703.02.K.1.

¶16    The language of section 13-703.02.K supports the proposition that a trial court may consider post-age-eighteen adaptive behavior to evaluate mental retardation. Although section 13-703.02.K.2 requires that the onset of intellectual and adaptive behavior deficits must have "occurred before the defendant reached the age of eighteen," the statute does not limit evidence of adaptive behavior to events that occurred before age eighteen. Indeed, at oral argument, the Apelts conceded that evidence should not be excluded simply because it involves post-age-eighteen behavior.

¶17    Evidence of post-age-eighteen adaptive behavior skills or deficiencies, whether observed by ADOC personnel or other witnesses, could well be relevant to a determination of mental retardation. Under Rule 401 of the Arizona Rules of Evidence, "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" is relevant.

---

concerning adaptive behavior prior to the age of eighteen, will be considered . . . at the appropriate time."

12

**¶18**      In this case, any testimony from ADOC personnel about the Apelts' adaptive behavior skills as adults tends to make the existence of any deficiency in adaptive functioning more probable than it would be without such evidence.[3] In addition, because mental retardation is a "permanent, relatively static condition," *Heller v. Doe by Doe*, 509 U.S. 312, 323 (1993), evidence of any skills or deficiencies in adaptive behavior exhibited by a defendant, even after age eighteen, helps determine whether a defendant has mental retardation.

**¶19**      Furthermore, testimony about adaptive behavior is not irrelevant or otherwise inadmissible merely because it comes from a lay witness. Finders of fact often consider testimony from lay witnesses in cases involving a defendant's mental condition. For example, "lay testimony has long been admissible in criminal trials on the issue of sanity," *State v. Bay*, 150 Ariz. 112, 116, 722 P.2d 280, 284 (1986), and has been

---

[3]      In its amicus brief, the American Association on Mental Retardation (AAMR) noted that excluding non-expert evidence solely on the basis of the ADOC employees' lack of experience with the defendant prior to the age of eighteen "would not be consistent with clinical practice" because "[t]rained experts in mental retardation regularly consider non-expert observations of post-eighteen adaptive behavior to be relevant to an assessment of mental retardation." On the other hand, the AAMR also noted that non-expert observations "receive little or no weight from clinical experts if they are made in the context of atypical environments (such as prison)." The weight that evidence is to be given, however, is a consideration separate from its admissibility. *See infra* ¶ 19.

13

"universally held" proper and admissible on the subject of competency, *Sapp v. Lifrand*, 44 Ariz. 321, 324, 36 P.2d 794, 796 (1934). "[T]he fact that [a person] is a lay witness goes not to the admissibility of the testimony but rather to its weight." *Bay*, 150 Ariz. at 116, 722 P.2d at 284.

¶20     Other jurisdictions have reached the same conclusion as we do today and have allowed corrections personnel to testify about a defendant's post-age-eighteen adaptive behavior in proceedings to determine mental retardation. *See, e.g.*, *Pickens v. State*, 126 P.3d 612, 617 (Okla. Crim. App. 2005) (corrections personnel testified about defendant's communication deficits, noting that "things had to be explained to [him] more than once, in 'simpler' terms, and multi-syllabic words confused him"); *Ex parte Briseno*, 135 S.W.3d 1, 18 (Tex. Crim. App. 2004) (four Texas Department of Criminal Justice officers testified at an *Atkins* hearing about Briseno's communication skills and that they "saw him reading magazines and filling out commissary forms appropriately").

¶21     Finally, we note that applying the trial court's interpretation of section 13-703.02.K would lead to an illogical result.  The provision requiring that symptoms of mental retardation occur before age eighteen applies to both elements of mental retardation:  significantly subaverage intelligence and significantly impaired adaptive behavior.  If the statutory

14

reference to onset before the age of eighteen precludes observations of adaptive behavior made after the age of eighteen, that preclusion applies equally to evidence of intellectual functioning. *See* A.R.S. § 13-703.02.K.2. A court, then, could consider IQ tests, which are routinely used to measure intellectual functioning, only if the tests were given before the age of eighteen. Because pre-age-eighteen IQ test results are not always available, such an interpretation could restrict a defendant's ability to prove mental retardation. That interpretation is also inconsistent with A.R.S. 13-703.02.B, which contemplates that IQ tests given to an adult defendant will be used to evaluate mental retardation. *See* A.R.S. § 13-703.02.B (providing that the court will appoint a psychological expert to administer an IQ test).

¶22 Accordingly, we conclude that the trial court erred as a matter of law when it held that evidence of the Apelts' adaptive behavior after age eighteen is irrelevant to a determination of mental retardation under section 13-703.02.[4]

¶23 The trial court also concluded that even assuming that ADOC testimony was relevant to the issue of mental retardation,

---

[4] Of course, the trial judge must determine whether any particular testimony by a lay witness regarding post-age-eighteen adaptive behavior should be excluded because, for instance, it lacks foundation, is not relevant, is cumulative or unduly prejudicial. Ariz. R. Evid. 701, 401, 403.

it would be unduly prejudicial.  Because this ruling grew out of the trial court's erroneous determination that the testimony of ADOC employees is irrelevant as a matter of law, we set aside this ruling also.[5]

**IV.**

¶24    For the foregoing reasons, we vacate that portion of the trial court's order that precluded testimony by ADOC employees and remand to the trial court for proceedings consistent with this opinion.

_____
Ruth V. McGregor, Chief Justice

CONCURRING:

_____
Rebecca White Berch, Vice Chief Justice

---

[5]    A trial judge usually will not exclude evidence as unduly prejudicial when the trial is to the court.  "Generally, error is less likely to be deemed to require reversal in a bench trial because the judge is less likely to be deflected from the task of fact-finding by prejudicial considerations that a jury might find compelling."  *People v. Edwards*, 431 N.W.2d 83, 86 (Mich. Ct. App. 1988); *see also State v. McMillin*, 783 S.W.2d 82, 96 (Mo. 1990) ("Where a judge, rather than a jury, is the trier of fact, the reviewing court presumes that inadmissible evidence is not prejudicial."), *abrogated on other grounds by Morgan v. Illinois*, 504 U.S. 719 (1992); *Commonwealth v. Carter*, 546 A.2d 1173, 1181 (Pa. Super. Ct. 1988) (noting that a judge can disregard evidence ultimately proving to be inflammatory, misleading or prejudicial, or resting upon a suspect foundation more easily than a jury can).

16

_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice


_____
W. Scott Bales, Justice