NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

CHRISTOPHER W. CHEVALIER, *Appellant*.

No. 1 CA-CR 16-0020
FILED 6-29-2017

---

Appeal from the Superior Court in Maricopa County
No. CR2013-002591-001 DT
The Honorable Jay R. Adleman, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Terry M. Crist, III
*Counsel for Appellee*

Ballecer & Segal, LLP, Phoenix
By Natalee E. Segal
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge James P. Beene joined.

---

**W I N T H R O P**, Judge:

**¶1**        Christopher W. Chevalier appeals his convictions and sentences for negligent homicide and leaving the scene of a fatal injury accident.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**        A grand jury indicted Chevalier for manslaughter and leaving the scene of a fatal injury accident.  At trial, the State presented the following facts:[1]  On March 3, 2013, Chevalier drove his Alfa Romeo convertible onto a sidewalk in Phoenix, and hit and killed the victim, who was walking to a store with a friend.

**¶3**        The collision bent the car's windshield frame down toward the passenger seat and shattered the passenger-side windshield.  The passenger-side mirror snapped off during the collision.  After hitting the victim, Chevalier swerved back onto the street, crossed several lanes of traffic, stopped at a red light, and then drove away, ignoring the victim's friend running down the sidewalk toward him.

**¶4**        Chevalier contacted police the following morning and informed them that his car might have been involved in an accident the day before.  When police arrived, they found the windshield of the Alfa Romeo in the garbage can, and the car appeared to have been wiped down or cleaned.

**¶5**        The jury acquitted Chevalier of manslaughter, but convicted him of the lesser-included offense of negligent homicide and of leaving the scene of a fatal injury accident.  The jury also found the negligent homicide

---

[1]    We view the evidence in the light most favorable to supporting the convictions.  *State v. Boozer*, 221 Ariz. 601, 601, ¶ 2, 212 P.3d 939, 939 (App. 2009) (citation omitted).

was a dangerous offense. The court sentenced Chevalier to a mitigated term of five years in prison, followed by five years' supervised probation.

¶6        Chevalier filed a timely notice of appeal. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2016), 13-4031 (2010), and 13-4033(A) (2010).[2]

## ANALYSIS

### I.        Preclusion of Late-Disclosed Expert

¶7        Chevalier argues the trial court abused its discretion and violated his due process rights in refusing to extend the discovery deadline to allow appointment of a biomechanical engineer to testify at trial.

¶8        Chevalier first disclosed the biomechanical engineer as an expert witness six days before the firm trial date. Chevalier requested leave from the court to submit the late disclosure, arguing that in a re-interview of the medical examiner after receiving an amended report approximately two months earlier, defense counsel had learned the medical examiner believed a downward or direct force fractured the victim's right tibia and fibula, and that "a biomechanical engineer would be better suited to address the location, type and aspect of the force." The State opposed the motion, arguing that the medical examiner had only amended her report to correct a typographical error, Chevalier had known for nearly a year about the medical examiner's conclusions "regarding the direction of force that caused the victim's leg fractures," and Chevalier's late disclosure was "the result of dilatory conduct and neglect, and merit[ed] preclusion."

¶9        At a hearing the day before trial was set to begin, the court denied the motion to allow the late-disclosed biomechanical engineer to testify, and denied funding for the expert. The court reasoned that Chevalier had failed to comply with the rules providing a mechanism for disclosure after the final disclosure date. The court also reasoned that the accident reconstruction expert Chevalier had hired could testify to the same effect; that is, "as to the manner how the decedent was struck, where she was struck, and the speed at the time of the collision." The court noted that, two months earlier, Chevalier had asked for a continuance to allow his accident reconstruction expert to submit a supplemental report.

---

2        We cite the current version of all applicable statutes because no revisions material to our analysis have occurred since the incident.

¶10 We review the trial court's ruling for an abuse of discretion. *Jones v. Sterling*, 210 Ariz. 308, 315, ¶ 29, 110 P.3d 1271, 1278 (2005) (recognizing that the trial court's denial of an appointment of an expert is reviewed for an abuse of discretion); *State v. Moody*, 208 Ariz. 424, 454, ¶ 114, 94 P.3d 1119, 1149 (2004) (stating that sanctions imposed for late disclosure "are discretionary decisions left to the trial court").

¶11 The court acted within its discretion in denying on procedural grounds the motion to allow the late disclosure and appoint the expert. Given the timing of his motion, Chevalier was required to support his motion "by affidavit, to extend the time for disclosure and use [of] the material or information." Ariz. R. Crim. P. 15.6(d). Chevalier did not support his motion for leave to disclose after the final deadline with an affidavit attesting to his diligence in discovery and disclosure. *See id.*

¶12 The court also acted within its discretion in denying his motion—filed more than two years after his indictment and on the eve of trial—because it was untimely. The court must allow an untimely disclosed witness to testify only "[i]f the court finds that the material or information could not have been discovered or disclosed earlier even with due diligence and the material or information was disclosed immediately upon its discovery." *Id.* The court did not abuse its discretion in crediting the State's avowal that the medical examiner had discussed the direction of force that caused the victim's leg fractures in an interview a year earlier, which should have provided Chevalier notice that he should seek out a biomechanical engineer. Accordingly, the court was permitted to deny for lack of diligence Chevalier's motion for late disclosure and appointment of a biomechanical expert—and any resultant continuance required to prepare for trial.

¶13 Finally, the court acted within its discretion in denying the motion on the ground Chevalier already had an accident reconstructionist to testify on the direction of force that caused the leg fractures. When an untimely disclosure occurs, the opposing party may move for sanctions, in which case the trial court "shall impose any sanction it finds appropriate," including preclusion of the witness. Ariz. R. Crim. P. 15.7(a). When selecting a remedy for late disclosure, "courts should consider 'the vitality of the evidence to the proponent's case; the degree to which the evidence or the sanctionable conduct has been prejudicial to the opposing party; whether the sanctionable conduct was willful or motivated by bad faith; and whether a less stringent sanction would suffice.'" *State v. Ramos*, 239 Ariz. 501, 504, ¶ 9, 372 P.3d 1025, 1028 (App. 2016) (citations omitted). In this case, as the court noted, the biomechanical engineer was not essential

to Chevalier's theory of the case. The appointment of a biomechanical engineer would have required a continuance of months to allow the expert to prepare a report and the State to retain a rebuttal expert of its own. The case had already been pending for two years, and had most recently been continued at Chevalier's request to allow his accident reconstructionist more time to prepare for trial. Under these circumstances, the court did not abuse its discretion in denying the motion for late disclosure and appointment of a biomechanical engineer.

¶14 Moreover, even assuming Chevalier has not waived his due process argument, the court did not violate Chevalier's due process rights in refusing to appoint the biomechanical engineer. The appointment of an expert witness is required when "such assistance is reasonably necessary to present a defense adequately at trial or sentencing." Ariz. R. Crim. P. 15.9(a). "A defendant has a due process right to such assistance upon a similar showing of necessity." *State v. Apelt*, 176 Ariz. 369, 375, 861 P.2d 654, 660 (1993) (citations omitted). "Absent substantial prejudice, we will not disturb the trial court's refusal to appoint experts." *State v. Gonzales*, 181 Ariz. 502, 511, 892 P.2d 838, 847 (1995) (citation omitted). Given Chevalier's accident reconstructionist's testimony on the direction of force, the trial court could properly conclude the appointment of a biomechanical expert was not reasonably necessary for Chevalier to adequately present his defense.

## II. Denial of Rule 20 Motion on Manslaughter

¶15 Chevalier also argues the court erred in denying his motion for judgment of acquittal on the manslaughter charge, in the absence of evidence that he acted recklessly.

¶16 As an initial matter, the jury acquitted Chevalier of the charged offense of manslaughter. Had the court granted a motion for judgment of acquittal on the manslaughter charge, it would nevertheless have instructed the jury on negligent homicide, as a lesser-included offense of reckless manslaughter. *See* Ariz. R. Crim. P. 13.2(c) ("Specification of an offense in an indictment, information, or complaint shall constitute a charge of that offense and of all offenses necessarily included therein."); Ariz. R. Crim. P. 23.3 ("Forms of verdicts shall be submitted to the jury for all offenses necessarily included in the offense charged . . . ."); *see also State v. Montoya*, 125 Ariz. 155, 157, 608 P.2d 92, 94 (App. 1980) (recognizing that negligent homicide is a lesser-included offense of reckless manslaughter).

**¶17** Under these circumstances, Chevalier's challenge to the sufficiency of the evidence to support manslaughter is moot. Because the court's denial of the Rule 20 motion on manslaughter does not present any issue of public importance or an issue likely to reoccur, we decline to address it. *See State v. Henderson*, 210 Ariz. 561, 565 n.2, ¶ 10, 115 P.3d 601, 605 n.2 (2005) (recognizing that a reviewing court generally does not address moot issues); *see also Moore v. People*, 925 P.2d 264, 267 (Colo. 1996) (declining to review the denial of a motion for acquittal as moot because the jury acquitted on the charge).

**¶18** Chevalier did not move at the close of the State's case for judgment of acquittal on negligent homicide. In a post-verdict motion under Rule 20(b), however, Chevalier argued orally that the evidence had not been sufficient to convict him of negligent homicide. The court denied the Rule 20(b) motion, reasoning that under the totality of the circumstances, including the clear weather, the lack of obstructions on the road, the evidence that Chevalier's car went onto the sidewalk a second time, and Chevalier's conduct afterward, "the jury was more than entitled to make the determination it did."

**¶19** We review *de novo* the sufficiency of the evidence to support a conviction. *State v. West*, 226 Ariz. 559, 562, ¶ 15, 250 P.3d 1188, 1191 (2011). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at ¶ 16 (citations omitted). "[W]hen reasonable minds may differ on inferences drawn from the facts, the case must be submitted to the jury, and the trial judge has no discretion to enter a judgment of acquittal." *Id.* at 563, ¶ 18, 250 P.3d at 1192 (citations omitted).

**¶20** Chevalier was convicted of negligent homicide for causing the death of another person with criminal negligence. *See* A.R.S. § 13-1102(A) (2010).

> "Criminal negligence" means, with respect to a result or to a circumstance described by a statute defining an offense, that a person fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

A.R.S. § 13-105(10)(d) (Supp. 2016). Substantial evidence supported the conviction. The evidence demonstrated that Chevalier drove onto the sidewalk at approximately forty miles per hour and hit the victim with force sufficient to kill her. A reasonable juror could believe that driving on the sidewalk at such a speed created a substantial and unjustifiable risk that grossly deviated from what a reasonable driver would do. *See Sawyer v. People's Freight Lines, Inc.*, 42 Ariz. 145, 151, 22 P.2d 1080, 1082 (1933) ("Sidewalks being in fact safety zones, an injury to a pedestrian thereon by a motor vehicle has been held to be prima facie evidence of negligence on the part of the driver.").

**¶21** Although Chevalier's expert opined that the victim was walking in the roadway at the time of impact, substantial evidence was presented that, instead, the victim was on the sidewalk: (1) the victim's friend testified she and the victim were on the sidewalk at the moment of impact; and (2) the physical evidence—including the scuff mark from the victim's shoe, the blood/hair spot where the victim landed, a linear trail of fiber and body scuff along the sidewalk, Chevalier's broken car mirror that travelled down the sidewalk, and a cone of debris away from the street—demonstrated the victim was struck on the sidewalk. Both detectives concluded the victim was on the sidewalk at impact and it was not possible for her to have been struck in the street. A reasonable juror could have believed the victim was struck on the sidewalk, and accordingly, that her death was caused by Chevalier's criminal negligence. The trial court did not err in denying the post-verdict motion for judgment of acquittal.

### III. Jury Instruction on Causation

**¶22** Chevalier next argues the trial court erred in instructing the jury during deliberations on a civil rather than a criminal definition of causation. During deliberations, the jury asked for a definition of "caused"—a term used in the manslaughter and negligent homicide instructions, and in a special interrogatory on the verdict form for leaving the scene of a fatal injury accident.

**¶23** Chevalier initially objected to the court giving any definition of cause. Chevalier, however, suggested that if the court were to instruct on cause, it should state that "to establish legal cause, there must be some evidence that but for defendant's conduct, the accident and resulting death would not have occurred." Over Chevalier's objection, the court instructed the jury: "A defendant's act causes an injury if it produces the injury, and if the injury would not have happened without the defendant's act."

¶24 Courts have broad discretion in determining whether and how to respond to jury questions. *State v. Ramirez*, 178 Ariz. 116, 126, 871 P.2d 237, 247 (1994). We review *de novo* whether a given instruction correctly states the law. *State v. Solis*, 236 Ariz. 285, 286, ¶ 6, 339 P.3d 668, 669 (App. 2014). We review jury instructions in their entirety to determine if they accurately reflect the law. *State v. Hoskins*, 199 Ariz. 127, 145, ¶ 75, 14 P.3d 997, 1015 (2000), *abrogation on other grounds recognized by McKinney v. Ryan*, 813 F.3d 798, 815-17 (9th Cir. 2015).

¶25 The jury instruction on causation was a correct statement of the law. The instruction tracked the statutory definition under A.R.S. § 13-203(A) (2010): "Conduct is the cause of a result when both of the following exist: 1. But for the conduct the result in question would not have occurred. 2. The relationship between the conduct and result satisfies any additional causal requirements imposed by the statute defining the offense." Accordingly, it is immaterial that the court took the instruction from the civil jury instructions. And although Chevalier argues the instruction was deficient because it failed to note the State must prove this element of the offense beyond a reasonable doubt, the court had already properly instructed the jury on the burden of proof. Finally, to the extent Chevalier argues the court should have also instructed on proximate cause,[3] he waived all but fundamental error by failing to request such instruction at trial, and has failed to show how the absence of such instruction prejudiced him.

  IV. *Supervening, Intervening Cause*

¶26 Chevalier also argues the trial court abused its discretion in refusing to instruct on superseding, intervening cause based on his expert's opinion that the victim was walking in the roadway at the time the incident occurred. The court denied his pretrial request for the instruction and his renewed request at the close of evidence, finding the victim's alleged jaywalking did not fit the definition of superseding, intervening cause, and at most would have amounted to contributory negligence, which is not a

---

[3]  "Proximate cause requires that the difference between the result intended by the defendant and the harm actually suffered by the victim 'is not so extraordinary that it would be unfair to hold the defendant responsible for the result.'" *State v. Marty*, 166 Ariz. 233, 237, 801 P.2d 468, 472 (App. 1990) (citation omitted).

defense in a criminal case.[4]  We will not disturb the trial court's refusal to give a requested jury instruction absent an abuse of discretion.  *State v. Vandever*, 211 Ariz. 206, 208, ¶ 7, 119 P.3d 473, 475 (App. 2005).

¶27        Defendants are "entitled to a jury instruction on any theory reasonably supported by the evidence."  *Id.* (citation omitted).  "An intervening event is superseding, i.e., a legal excuse, only if it was unforeseeable and, with the benefit of hindsight, may be described as abnormal or extraordinary."  *Id.* at ¶ 8 (citation omitted).

¶28        The court did not abuse its discretion in refusing to instruct on superseding, intervening cause.  A pedestrian walking in the roadway is not an unforeseeable or extraordinary event warranting such an instruction.  *See State v. Slover*, 220 Ariz. 239, 244, ¶ 14, 204 P.3d 1088, 1093 (App. 2009) (holding that in a prosecution for negligent homicide, the victim's intoxication was not a superseding, intervening cause because the defendant's conduct of driving while intoxicated "at the very least, increased the foreseeable risk that the victim would die in the accident" (citations omitted)); *Vandever*, 211 Ariz. at 208, ¶ 8, 119 P.3d at 475 (holding that in a prosecution for manslaughter, the other driver's excessive speed was not a superseding, intervening cause because the defendant's illegal conduct created a foreseeable risk of collision); *State v. Freeland*, 176 Ariz. 544, 548, 863 P.2d 263, 267 (App. 1993) (holding that in a prosecution for aggravated assault and DUI, the failure of the victim to wear a seatbelt was not a superseding, intervening cause because it was reasonably foreseeable).  Because a pedestrian walking in the roadway is neither unforeseeable nor extraordinary, the trial court did not abuse its discretion in denying Chevalier's request for a superseding, intervening cause instruction.

¶29        We are not persuaded otherwise by Chevalier's argument that the jury's request during deliberations for a definition of "cause" showed he suffered prejudice from the absence of a superseding, intervening cause instruction.  The instructions for manslaughter and negligent homicide required the jury to find Chevalier "caused the death of another person."  The instruction on the verdict form for leaving the scene of a fatal injury accident also had a special interrogatory asking the jury to find whether the State "proved the defendant caused the accident."  That the instructions did not provide a definition of causation is the most reasonable explanation for the jury's question.  It is sheer speculation to

---

4        The court, however, did instruct the jury that "[i]f sidewalks are provided, a pedestrian shall not walk along and on an adjacent roadway."

suggest the jury's inquiry had anything to do with whether the victim was in the street or on the sidewalk at the time of the collision.

## CONCLUSION

¶30      For the foregoing reasons, we affirm Chevalier's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:   AA